George E. FORT, Plaintiff,

v.

OKLAHOMA INDUSTRIES, INC., a Corporation, Oklahoma City Industrial and Cultural Facilities Trust, a Trust, Luther T. Dulaney, Jean Everest, Edward L. Gaylord, John Kilpatrick, Jr., and Dean A. McGee, Trustees of the Oklahoma City Industrial and Cultural Facilities Trust, Defendants.

No. 40482.

Supreme Court of Oklahoma.

Oct. 1, 1963.

Barth P. Walker, Walker & George, Oklahoma City, for plaintiff.

George J. Fagin, Barefoot & Moler, by Edward H. Moler, Oklahoma City, for defendants.

Merton M. Bulla, William C. Kessler, Oklahoma City, Charles G. Humble, Bethany, amici curiae.

WILLIAMS, Justice.

This original action for injunction was filed by George E. Fort, a resident taxpayer and property owner in Oklahoma City, for himself and others similarly situated. Defendants are Oklahoma Industries, Inc., a corporation, Oklahoma City Industrial and Cultural Facilities Trust, a trust, and Luther T. Dulaney, Jean Everest, Edward L. Gaylord, John Kilpatrick, Jr., and Dean A. McGee, trustees of the named trust.

After the action was filed, Merton M. Bulla, William G. Kessler and Charles G. Humble were permitted to file brief amici curiae.

On the 15th day of December, 1962, defendant corporation, Oklahoma Industries, Inc., caused to be formed the Oklahoma City Industrial and Cultural Facilities Trust under the provisions of 60 O.S.1961 §§ 176 to 180, both inclusive, known as the Public Trust Law. A provision of that law is that the purpose of such a trust may be the furtherance or providing of funds for the furtherance of any authorized or proper function of the beneficiary municipality.

The purposes of the trust here involved are stated generally to be "to promote the development of industry and culture and industrial, manufacturing, cultural and educational activities within and without the territorial limits of the City of Oklahoma City"; "to purchase, acquire, construct, re-construct, extend, install, equip, maintain, repair, supply, enlarge, remodel, sell, lease, furnish or otherwise deal in any property, building, improvement, and facilities to be sold, leased or furnished to or occupied by the National Cowboy Hall of Fame and Western Heritage Center * * * for use as a public museum or for other educational and cultural purposes and uses necessary and incident thereto."

Specifically, the trustor and trustees apparently have in mind that in addition to assisting the Cowboy Hall of Fame and Western Heritage Center, the trustees will help to bring new industry to the Oklahoma City area through the means of acquiring the necessary lands and the construction thereon of suitable installations for the use of certain named and any other business concerns possible, and lease same to them, thereby obviating the necessity of that much capital outlay on the part of such industries.

The trust indenture gives the trustees practically unlimited power to do all things necessary to perform the foregoing purposes and functions. Meder v. City of Okla. City et al., Okl., 350 P.2d 916. The duration of the trust is stated to be "for the term of duration of the beneficiary and un-

til such time as its purpose shall have been fully fulfilled, or until it shall be terminated * * *" (following section 177 of the Public Trust statute to which reference was above made).

Provision was made that the trust estate shall consist of funds and property presently in the hands of the trustees and any properties, funds, leasehold rights, money, and all other things of value coming into the possession of the trustees pursuant to the trust indenture. The trust indenture provides "that no property or revenues of the City of Oklahoma City shall be mortgaged, pledged, or otherwise encumbered to secure any trust indebtedness except that any leasehold interest acquired from said City may be mortgaged, pledged or encumbered by the Trustees."

The City of Oklahoma City was made the beneficiary of the trust. By Ordinance No. 10,000, passed December 18, 1962, the City Council of Oklahoma City approved the trust indenture and accepted the trust as the beneficiary thereof.

■ In view of the public importance of this matter and the need for an early decision, we have determined to accept original jurisdiction. Meder v. City of Oklahoma City et al., supra.

■ Pursuant to equitable principles developed as a part of the common law of Oklahoma, a public trust may lawfully issue its bonds to be repaid solely from income or revenue. See Board of County Commissioners of Oklahoma County v. Warram, Okl., 285 P.2d 1034; Morris v. City of Okla. City et al., Okl., 299 P.2d 131; and Meder v. City of Oklahoma City et al., supra.

In the case of Board of County Commissioners of Oklahoma County v. Warram, supra, in the first paragraph of the syllabus, this Court said:

"A valid trust in property, with a governmental entity as beneficiary, may be created for the furtherance, or the providing of funds for the furtherance, of any public function which the governmental entity might be authorized by law to perform * * *."

An amendment to our State Constitution, Article 10, § 35, became effective May 1, 1962. That amendment authorized cities and towns to finance the acquisition and development of industry and industrial improvements and facilities through the means of the voting and issuance of revenue bonds. Since the adoption of such amendment and pursuant to the Public Trust Act, supra (60 O.S.1961 §§ 176 to 180, both inclusive), the developing and securing of industry is an authorized and proper function of the trustees of a public trust of which a municipality is the beneficiary.

It is to be noted that another statute, the Local Industrial Development Act, 62 O.S. 1961 §§ 651 through 664, provides for the accomplishment of a municipality's or county's purposes of securing or developing industry within or near itself under the terms and provisions of the Public Trust Law through the means of the issuance and sale of the bonds of a trust repayable from income or revenue but requires that the public trust in that case, for the issuance of such bonds, have the approval of a majority of the qualified electors of the municipality or county voting at an election called for that purpose.

The plaintiff alleges and the parties have stipulated that "the trustees are presently threatening and proposing to issue revenue bonds as provided for under the Trust Indenture without complying with the terms and provisions of 62 O.S.1961 §§ 651 to 664 inclusive."

Under Points II, III, and IV of his brief plaintiff contends that the Local Industrial Development Act is a specific act which supersedes the Public Trust Act insofar as the financing of improvements and facilities for securing and developing industry is concerned.

Plaintiff in argument relies upon section 11 of the Local Industrial Development Act (62 O.S.1961 § 661) wherein in sub-section (a) the word "Trustees" is stated to mean

"the trustees appointed by the governing body of any municipality or the board of county commissioners to carry out the provisions of this act, and as provided in 60 O.S.1951, §§ 176–180, inclusive, as amended by Sections 1 and 2, Chapter 4, Title 60, page 277, Oklahoma Session Laws 1953 * * *."

Plaintiff's contention is that the Legislature by such definition intended to amend 60 O.S.1961 §§ 176–180 so as to require, on the part of a trust sought to be created under the Public Trust Law (60 O.S.1961 §§ 176–180), compliance also with the requirements of the Local Industrial Development Act (62 O.S.1961 §§ 651–664).

With respect to this argument it is to be noted that immediately preceding such subsection (a) of such section 11 are the following words, to-wit: "Wherever used or referred to in this act, unless a different meaning clearly appears from the context".

Also, we specifically point out that, in the above definition in such section 11, the Legislature used the word "and", thus indicating wherever the word "Trustees" was used or referred to in the Local Industrial Development Act, unless a different meaning should clearly appear from context, that such term was intended to include trustees appointed by the governing board of a municipality or county and, if applicable, those appointed pursuant to the terms of the Public Trust Act.

In our opinion, in so defining the term "trustees", the Legislature expressed no intention thereby of implication that the trustees of a charitable public trust created pursuant to the provisions of the Public Trust Act would further have to comply with the requirements of the Local Industrial Development Act before issuing their revenue bonds. We deem our position in this respect to be further substantiated by the matters hereinafter discussed.

Plaintiff further argues concerning the meaning of the word "alternative" as used in section 15 of the Local Industrial Development Act (62 O.S.1961 § 664). His contention is that such expression there refers to "method of financing". He argues that the intention of the Legislature was that when any charitable public trust should undertake to acquire funds for the purposes of promoting industrial growth in a municipality by means of the issuance and sale of its revenue bonds it should issue and sell same only after compliance with the provisions and requirements of the Local Industrial Development Act.

For the reasons hereinafter set forth, we decline to follow the line of reasoning so suggested.

At no point in the Local Industrial Development Act is it specifically stated that such act supersedes any other act. In fact, the language of Section 664 of that act indicates otherwise. Such section provides: "This act is intended to supplement all constitutional provisions and other acts now existing or hereafter adopted designed to secure and develop industry and, when applicable in accordance with the provisions hereof, may be used by any municipality or county as an alternative notwithstanding any constitutional provisions or any other act now existing or hereafter adopted authorizing a municipality or county, or any commission or agency thereof, to issue bonds for the purpose of securing and developing industry. This act shall be liberally construed to accomplish the purposes hereof."

█ The language of this section makes it clear that it was not the intention of the Legislature to supersede or repeal the Public Trust Act by enacting the Local Industrial Development Act. Rather, the latter act was, by its own terms, stated to be supplementary in nature. It provided that the act, including the provisions and method designated therein for financing industrial develoment by municipalities or counties (issuance and sale of revenue bonds of a trust used by such a municipality or county), would be supplementary and alternative or additional to any constitutional or statutory enactments then existing or thereafter to be adopted, including any provisions for

and methods of issuance of revenue bonds by municipalities or counties or public charitable trusts used by them for industrial development, contained in any such constitutional or statutory enactment.

A careful study of Section 4 of the Local Industrial Development Act, being 62 O.S. 1961 § 654, in our view, clinches the conclusion to which we have come in this case. It, in effect, provides in its first few lines that revenue bonds may be issued by a public trust as referred to in section 2 of the act (probably meant section 3) for the purposes set forth in sections 2 and 3, only with the approval of a majority of the qualified electors of the municipality or county, etc.

Section 2 of such Act, being 62 O.S. 1961 § 652, provides as follows:

"Any municipality and any county is hereby authorized to own, acquire, construct, reconstruct, extend, equip, improve, maintain, sell, lease, contract concerning, or otherwise deal in or dispose of any lands, buildings, or facilities of any and every nature whatever that can be used in securing or developing industry within or near the municipality or county."

Section 3 of such Act, being 62 O.S. 1961 § 653, provides as follows:

"Municipalities and counties are hereby authorized to use any available revenues for the accomplishment of the purposes set forth in Section 2 hereof, and are hereby authorized, as hereinafter provided, to accomplish such purposes under the terms and provisions of 60 O.S.1951, §§ 176–180, inclusive, as amended by Sections 1 and 2, Chapter 4, Title 60, page 277, Oklahoma Session Laws 1953 (60 O.S.Supp. 1959, §§ 176 and 177), relating to public trusts, either alone or together with other available funds and revenues."

Then Section 4 of such Act, being 62 O.S.1961 § 654 provides as above noted of effect that a *municipality or county* desiring to use the means provided in the Public

Trust Law (revenue bonds issued and sold by a public trust) may do so only with approval of a majority of certain of its voters.

The correctness of our conclusion herein we believe to be further demonstrated in the fact that a *municipality or county* under further provisions of the Local Industrial Development Act (see section 6 thereof, being 62 O.S.1961, § 656) may with the approval of a majority of such voters, even go so far as to turn over to the trustees of a trust used by the municipality or county surplus revenues derived from its water, sewer, gas and electric utilities. Such section provides in part as follows:

" * * * In addition, the trustees, with prior approval of the municipality or county, are authorized to pledge to and use for the payment of the principal of and interest on the bonds, and paying agent's fees, such revenues derived from other lands, buildings, and/or facilities used and useful or securing and developing industry and/or surplus revenues derived from water, sewer, gas, and electric utilities owned by the municipality or county and by such beneficiary transferred or leased to the trustees for such purpose, provided that such transfer or lease shall have been included in the question voted upon and approved in the election required to be held under Section 4 of this act. * * * "

As a corollary to plaintiff's argument that the Local Industrial Development Act supersedes the Public Trust Act, he contends that defendants may issue revenue bonds of the trust only after approval thereof by a vote of the qualified tax-paying voters of Oklahoma City.

We have held previously under the Public Trust Act, 60 O.S.1961 §§ 176 to 180, both inclusive, that approval of the electors is not required for issuance of revenue bonds. In this connection see the cases of Morris v. City of Oklahoma City et al., supra, and Meder v. City of Oklahoma City et al., supra. And we have determined herein that the Local Industrial Develop-

ment Act neither superseded nor amended the Public Trust Act.

Amici curiae contend that the defendant trustees are bound by the provisions of Art. 10, § 35 of the State Constitution and may issue their revenue bonds only after approval of such action by a majority vote of the qualified taxpaying electors of Oklahoma City voting on the matter. We do not agree. Paragraph (a) of such section is as follows:

"(a) Any incorporated town and any county may issue, by and with the consent of the majority of the qualified taxpaying voters of said municipality or county voting on the question at an election held for the purpose, bonds in sums provided by such majority at such election for the purpose of securing and developing industry within or near the said municipality holding the election, or within the county holding the election."

It is noted that the provisions of the quoted paragraph relate to the issuance of bonds by incorporated towns and counties rather than by public charitable trusts.

A consideration of the provisions of the specified sections of the Local Industrial Development Act leaves no doubt that unless the municipality or county employs such trust in a manner contemplated in such Act, it was not the intention of the Legislature to require the approval by the described electorate of the issuance of revenue bonds by a public trust and thereby vitiate the holdings of the above cited (Warram, Morris and Meder) cases to the effect that public charitable trusts may issue revenue bonds without a vote of the people. Section 15 of such Act, being 62 O.S.1961 § 664, states that the Local Industrial Development Act "when applicable" may be used by any municipality or county as an "alternative".

As above indicated, such Local Industrial Development Act allows any municipality and any county to use a trust created under such Public Trust Act for the purposes of securing or developing industry.

In the event a municipality or county desires that a trust created or used by it shall raise funds by the issuance and sale by the trust of its revenue bonds, then in such event the electors of the municipality or county must approve the issuance of such bonds. The trust formed in the instant case is not one created by Oklahoma City or presently being used by it for any purposes of such City as provided in the Local Industrial Development Act, supra, and, therefore, is not governed by the provisions of such Local Industrial Development Act. Rather, up to this point, at least, this trust falls in the general category of those considered previously by this Court in the cases of Board of County Commissioners of Oklahoma County v. Warram, supra, Morris v. City of Oklahoma City, supra, and Meder v. City of Oklahoma City, supra.

In the instant case it was not the municipality or county which created the trust, but rather a private corporation, nor is Oklahoma City presently using the trust for industry-getting purposes. The Local Industrial Development Act applies only to trusts created by municipalities or counties.

We have noted hereinabove that among the stated purposes of the trust herein involved is included one "to * * * sell, lease, furnish or otherwise deal in any property, building, improvement, and facilities to be sold, leased or furnished to or occupied by the National Cowboy Hall of Fame and Western Heritage Center * * *."

Also hereinabove we have recited that one stated purpose of the trust with which we are here concerned was to "promote the development of industry and culture * * *." Further stated in the trust instrument under that general heading, but not recited hereinabove was a purpose to acquire and improve properties and "sell, lease, furnish, and otherwise deal in any property," etc. and

"(3) To lease, rent, furnish, or provide such property, buildings, improvements, and facilities for cultural and educational purposes, and for use by

industrial and manufacturing firms, businesses, or concerns upon such terms as the Trustees may deem suitable; and to relinquish, rent, dispose of, or otherwise make provisions for properties owned or controlled by the Trust but no longer needful for trust purposes."

We note that the trust instrument of subject trust further provides as follows, to-wit:

"* * * Provided, that no property or revenues of The City of Oklahoma City shall be mortgaged, pledged, or otherwise encumbered to secure any Trust indebtedness, except that any leasehold interest acquired from said City may be mortgaged, pledged or encumbered by the Trustees."

In connection with the recitals appearing immediately hereinabove relating to the matter of subject trust leasing property from the City of Oklahoma City, and, perhaps, in turn leasing same to industries, we note that in the Local Industrial Development Act, the Legislature in 1961 saw fit to provide that a municipality or county may

"own, * * * improve * * *, sell, lease, contract concerning, or otherwise deal in or dispose of any lands, buildings, or facilities of any and every nature whatever that can be used in securing or developing industry within or near the municipality or county." (62 O.S.1961 § 652, supra).

We observe at this point that there is presently involved in this action no claimed right on the part of the trust that the City of Oklahoma City may sell, lease, contract concerning or otherwise deal in or dispose of any properties now owned or hereafter to be acquired by such City to the involved trust, or any claimed right on the part of the City of Oklahoma City to sell, lease, contract or otherwise deal any such properties to such trust without first complying with the Provision of the Local Industrial Development Act. We therefore are not called upon herein to determine whether, if such City were to attempt to lease any of its properties now owned or hereafter to be acquired, to such trust, for purposes of securing industry or furthering the acquiring of industry, compliance with the Local Industrial Development Act, including an election as to whether such lease should be approved, would then be required.

Injunction denied.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON, JOHNSON, JACKSON and BERRY, JJ., concur.