Lawrence S. MORRISON, Plaintiff,

v.

ARDMORE INDUSTRIAL DEVELOPMENT CORPORATION, a corporation et al., Defendants.

No. 43112.

Supreme Court of Oklahoma.

Aug. 20, 1968.

As Amended Sept. 13, 1968.

818

Joe B. Thompson, Ardmore, for plaintiff.

Andrew B. Riddle, Jr., Ardmore, George J. Fagin and Andrew J. Haswell, Jr., Oklahoma City, for defendants.

LAVENDER, Justice.

In this original proceeding in this court, the plaintiff, as a resident and taxpayer of, and owner of property in the City of Ardmore, Oklahoma, acting upon behalf of himself and all others similarly situated, asks this court to assume original jurisdiction and to enjoin the trustees of the Ardmore Development Authority from executing a proposed bond indenture, a proposed lease agreement between the trustees and Uniroyal, Inc., a corporation, which would produce the revenues for payment of the bonds to be issued under the proposed bond indenture, and the interest thereon, and from issuing any bonds, pursuant to the proposed bond indenture, which would provide the funds for the acquisition of the land, and the construction and equipment of improvements thereon, covered by the proposed lease, or taking any further action or proceedings in connection therewith. The essential facts pleaded by the plaintiff are admitted by the defendants.

By a written trust indenture dated April 15, 1964, the Ardmore Industrial Development Corporation, a corporation, as "trustor," and seven individuals, as "trustees," created a public trust, with the City of Ardmore, Oklahoma, as the "beneficiary," for the purpose (among others) of acquiring, owning, constructing, reconstructing, extending, improving, leasing, purchasing, installing, equipping, maintaining, repairing, enlarging, remodeling, and operating buildings and other facilities for (among

other purposes) the use of corporations, individuals, partnerships or proprietary companies for industrial development; and, in accordance with the provisions of Oklahoma's "public trust act" (60 O.S.1961, §§ 176 through 180), the City of Ardmore accepted the beneficial interest in such trust, which was done by city ordinance and such acceptance was endorsed on the trust indenture.

That trust indenture provided that the trustees of the trust shall be citizens and residents of the beneficiary city who are the persons then holding the offices of President, Vice President, Second Vice President, and Treasurer of the trustor corporation, and the Mayor of the beneficiary city, as voting trustees, and the City Manager of the Beneficiary and the Executive Manager of the Chamber of Commerce of the beneficiary city, as non-voting, advisory trustees, and their successors in office. The seven individuals who executed the trust indenture as "trustees," and thereby accepted the duties of trustees thereunder, occupied those offices at the time.

Under date of November 29, 1967, the corporate trustor, the beneficiary city, and the seven trustees of the Ardmore Development Authority, entered into a written instrument amending some of the provisions of the original trust indenture relating to the trustees of the trust. The amendment provided for twelve trustees, with nine of them, referred to as "regular" trustees, having all of the voting power, and three of them, referred to as "ex-officio" trustees (the City Manager of the beneficiary city, the Executive Manager of the Chamber of Commerce, and the person named by the "trustees" as the General Manager of the Trust and Industrial Director of the beneficiary city), and their successors, being non-voting, advisory trustees. Under the amendment, three of the nine voting trustees are appointed by the governing body of the beneficiary city, and three of them are appointed by the board of directors of the Chamber of Commerce of the beneficiary city, and those six trustees appoint the other three voting trustees. The City of Ardmore officially accepted the beneficial interest under the trust indenture as so amended, and the present trustees were appointed as provided in this amendment. By stipulation filed herein, the parties hereto state that, by written instrument attached to the stipulation, all other parties having vested interests because of prior transactions with the trustees consented to this amendment to the original trust indenture and to a second amendment to the original trust indenture, hereinafter mentioned.

The trustees admit that, as alleged by the plaintiff, they intend to execute the proposed bond indenture and the proposed lease agreement, pleaded by the plaintiff, and to issue the $73,000,000. aggregate principal amount of industrial development bonds provided for in that bond indenture, without any approval of any such action by the electors of the beneficiary city.

As the basis for the injunction prayed for by the plaintiff, he contends, first, that the above-mentioned amendment of the trust indenture terminated the trust because it is in violation of the following provision of Section 1 of Article VIII of the trust indenture:

"* * * Trustor now declares that this Trust Indenture shall be irrevocable from the moment it is signed by him and delivered to the Trustees, and that it shall thereafter stand without any power whatsoever at any time to alter, amend, revise, modify, revoke or terminate any of the provisions of this Trust Indenture;"

and second, that, if such amendment be effective, it results in the beneficiary city having such practical control over the trustees and the trust that the legal and equitable interests of the trustees and the beneficiary under the original trust indenture merged and terminated the trust, or that the city is using the trust in such a way as to come within the exception stated in the second paragraph of the court's syllabus to Fort v. Oklahoma Industries, Inc., et al.

(1963), Okl., 385 P.2d 470, so that the provisions of the Local Industrial Development Act (62 O.S.1961, §§ 651 through 664) are applicable and the bonds in question cannot be issued without the approval of a majority of the qualified electors of the city voting at an election called for that purpose and the bonds must comply with the provisions of that act.

■ Considering the questions concerning the application of the Local Industrial Development Act (which can be reached only after determining the questions concerning the effectiveness of the amendment to the original trust indenture involved in this case) to be of as much public importance, and the need for an early determination thereof to be as great, as in Fort v. Oklahoma Industries, Inc., supra, or in Meder v. City of Oklahoma City et al. (1960), Okl., 350 P.2d 916, or Morris v. City of Oklahoma City et al. (1956), Okl., 299 P.2d 131, we have assumed original jurisdiction on the basis of those cases.

■ We construe the provision of Section 1 of Article VIII of the original trust indenture, relied upon by the plaintiff, as being applicable only to unilateral action by the trustor, and as not precluding any action mentioned therein when taken jointly, as here, by the trustor, the trustees of the trust, and the beneficiary of the trust, with the consent of all other interested parties.

■ Under the provisions of 60 O.S. 1961, § 175.41, every trust (other than a spendthrift trust not created by the trustor for his own benefit) is revocable by the trustor unless expressly made irrevocable by the terms of the instrument creating the trust, but *any* trust (other than a spendthrift trust not created by the trustor for his own benefit) may be revoked by the trustor upon the written consent of all living persons having a vested or contingent interest in the trust. Since an alteration, amendment, revision, or modification of a provision of an instrument creating a trust, in effect, revokes a portion of the trust, we hold that any trust which may be re-

voked entirely in the manner provided in 60 O.S.1961, § 175.41 may be altered, amended, revised, modified, revoked, or terminated, in part, in the same manner.

Especially in view of our construction of the portion of Section 1 of Article VIII of the original trust indenture involved in this proceeding, relied upon by the plaintiff, as being applicable only to unilateral action of the trustor, the above-mentioned amendment to the original trust indenture was not in violation of that provision of the indenture.

■ Under the declaration of trust involved in Woodward v. City of Anadarko et al. (1960), Okl., 351 P.2d 292, the members of the governing body of the beneficiary city were, ex officio, the trustees of the public trust created thereby, and the city manager of the beneficiary city was, ex officio, the general manager of the trust, under the direction of the trustees. This court held, in the second paragraph of its syllabus to the opinion in that case:

"The fact that the trustees of said trust also are members of the governing body of the City of Anadarko in law does not effect a merger of the estates of the trust or create any conflict of interest or duties."

Under that view of the law, there certainly would be no merger of the estates of the trust in the present instance, where, under the trust indenture, as amended, the governing body of the beneficiary city only appoints three of the nine trustees who have voting power, the city manager of the beneficiary, although an advisory trustee, has no voting power, and the only other trustee who, under the trust indenture, as amended, is an official of the beneficiary, becomes a trustee and a city official (Industrial Director) by virtue of his appointment, by the other trustees, as General Manager of the trust.

Furthermore, under the provisions of this trust indenture, as amended, concerning the appointment of trustees of the trust, the governing body of the beneficiary city has no more control over the trustees and

the trust than the board of directors of the Chamber of Commerce of the beneficiary city is given thereunder.

■ We conclude that, as in Fort v. Oklahoma Industries, Inc., supra, the Local Industrial Development Act (62 O.S.1961, §§ 651 through 664) has no application to the situation presented by the pleadings in this case. This disposes of a related contention by the plaintiff that a second amendment to the original trust indenture, under date of July 8, 1968, (relating to the trustees contracting for construction work and materials), which was entered into, and consented to, by all interested parties in the same manner as was the first amendment mentioned above, was ineffective because in violation of Section 1 of Article VIII of the original trust indenture, or, if effective otherwise, is in conflict with the provisions of the Local Industrial Development Act (62 O.S.1961, §§ 651 through 664).

As separate bases for his prayer for an injunction to prevent the execution of the proposed bond indenture and lease agreement, and the issuance of the bonds provided for in the bond indenture, the plaintiff makes several attacks on the forms of lease agreement and bond indenture as submitted to this court as a part of his petition herein.

■ For instance, he attacks the lease agreement as being invalid because of insufficient consideration for the use of the leased property and as the purchase price of the leased property in event the lessee exercises its option to purchase the property either during the primary (original) term of the lease which expires on September 1, 1993, or during an additional twenty-five year term provided for in the lease agreement at the option of the lessee. He contends that, under the lease agreement, the rental to be paid during the primary term of the lease would equal only the total of the principal of, and interest on, the bonds to be issued to finance the project, and that the lessee is given the option to purchase the leased property for not less than one dollar at any time during the primary term of the lease, or for one dollar at any time during the additional term if the lease be renewed.

However, under the provisions of the lease agreement, the lessee is, in any and all events, obligated to pay, prior to each interest payment date during the primary term of the lease, not only rental equal to the principal of, and interest on all of the bonds coming due on that interest payment date (except the interest on the bonds from the date thereof, September 1, 1968, to the date of the original delivery thereof, which is to be paid by the successful bidder for the bonds as a part of the purchase price therefor), but also all costs and expenses in connection with the original issuance of the bonds, the compensation of paying agents for the bonds, and the compensation of, and necessary advances made by, the trustee for the holders of the bonds provided in the bond indenture, as well as all costs and expenses of purchasing, or redeeming, outstanding unmatured bonds in the event the lessee, prior to retirement of all of the bonds, exercises its option to purchase the leased property. The lessee is given the option to purchase the leased property, at any time prior to retirement of all of the bonds (and, apparently, it is contemplated that the last maturity shall be not later than the date of the expiration of the primary term of the lease), if the lessee then not be in default, for an amount necessary to make the total in the bond sinking fund sufficient to purchase, or to redeem at the earliest possible date, all then outstanding bonds. The lessee is also given the option, if not in default, to renew the lease agreement for an additional term of twenty-five years from the end of the primary term, at a rental of $2,000.00 per month but otherwise under the same covenants and provisions which relate to the primary term, with the option, at any time during such additional term, if not then in default, to purchase the leased property for one dollar.

In other words, under the basic plan set forth in the proposed lease agreement, the State of Oklahoma and particularly the

City of Ardmore gains a new industry, possibly permanently, but in any event for approximately twenty-five years and possibly for approximately fifty years, all in harmony with the state's policy, as expressed in the Constitution and statutes, of industrial development, and at no cost whatsoever to either the people of this State, the city or to the public trust involved.

As examples of the plaintiff's attacks on the proposed bond indenture, he argues that it does not specify the name of the trustee for the holders of the bonds, or the exact amount of coupon bonds and of registered bonds (both of which are provided for therein), or the rate or rates of interest to be paid on such bonds.

■ Under the proposed bond indenture, the bonds as originally issued in the aggregate principal amount of $73,000,000.00 may be coupon bonds or fully registered bonds, or any combination thereof, as specified by the successful bidder for the bonds, and, at any time prior to maturity, bonds of either class may be exchanged for bonds of the other class, at no expense to the trust. For this reason, the exact amount of each class of bonds to be issued under the bond indenture cannot be specified therein.

■ We also note that the form of proposed bond indenture, as submitted to this court, bears the legends on the front page thereof, "6710–II—Proof of July 22, 1968," and "Contained herein is a preliminary draft of a proposed Bond Indenture which is subject to correction and change. This draft is for information purposes only," and that the form of proposed lease agreement bears similar legends on the front page thereof. Obviously, it is contemplated that, prior to the execution of the proposed instruments, all of the blank spaces in these forms will be filled in with the proper information, with the schedule of bond maturities missing from the bond indenture to be determined in the meantime, and the interest rate or rates, missing from the same instrument, to be in accordance with the bid of the successful bidder for the

bonds, and the name of the trustee for the holders of the bonds to be filled in after arriving at an agreement with an entity possessing the qualifications specified in the bond indenture form for such a trustee, and with the blanks in the lease agreement form to be filled in in harmony with the bond indenture.

We perceive no legal objection to any part of the basic plan for the acquisition, construction, equipping, and financing of the proposed project, as disclosed by the preliminary drafts of proposed bond indenture and proposed lease agreement submitted to the court.

■ As in the case of Meder v. City of Oklahoma City et al., supra, and for the same reasons, we have concluded that our holding in this case should be advisory as well as directory.

Based upon our examination of the instruments involved, we hold that the original trust indenture creating the Ardmore Development Authority, dated April 15, 1964, and the first and second amendments thereto, dated November 29, 1967, and July 8, 1968, respectively, are valid, legal and binding instruments; and that the basic plan for the acquisition, construction, equipping, and financing of the project described in the proposed lease agreement, as set forth in the above mentioned preliminary drafts of proposed bond indenture and proposed lease agreement, to be entered into as of September 1, 1968, can, validly, be carried out under the principles of the common law relating to trusts, as modified by the Oklahoma public trust act (60 O.S. 1961, §§ 176 through 180) and the general statutes relating to trusts, without compliance with the provisions of the Oklahoma "Local Industrial Development Act" (62 O.S.1961, §§ 651 through 664); that the duly appointed, qualified and acting trustees of the Ardmore Development Authority could, validly, execute the proposed forms of bond indenture and lease agreement submitted to this court, if completed as contemplated by those forms; and that, if the incurring of the indebtedness provided

for in such bond indenture, in accordance with the provisions of the bond indenture, and the execution of such completed bond indenture and lease agreement upon behalf of the Authority, be first duly authorized by proper resolution of the trustees of the Authority, such bond indenture and lease agreement would be valid and binding instruments and the obligations arising thereunder and in accordance with the provisions thereof would be enforceable by and against the trustees of the Authority in accordance with the terms and tenor thereof.

It is, therefore, the judgment of this court that the injunction prayed for by the plaintiff herein to prevent the trustees of the Ardmore Development Authority from executing the proposed bond indenture and proposed lease agreement, hereinabove mentioned, and from issuing the bonds provided for in the proposed bond indenture or taking any further action or proceedings in connection therewith, should be, and hereby is, denied.

All the Justices concur.