The BOARD OF COUNTY COMMISSION-
ERS OF OKLAHOMA COUNTY and
James Geddes and Sylvia Geddes, Plain-
tiffs in Error,

v.

James H. WARRAM, Russell L. Whisenant,
and Grady D. Harris, Jr.; The Fidelity
National Bank & Trust Company of Okla-
homa City; R. J. Edwards, Inc.; and
Metropolitan Water Company, Defendants
in Error.

No. 36937.

Supreme Court of Oklahoma.

July 5, 1955.

Granville Scanland, County Atty., Nathan S. Sherman, Asst. County Atty.,

Valdhe F. Pitman, Oklahoma City, for plaintiffs in error.

Leon S. Hirsh, Johnson, Gordon, Cook & Cotter, Oklahoma City, for defendants in error.

HALLEY, Justice.

This is an appeal from a judgment of the District Court of Oklahoma County. This action was instituted by James H. Warram, Russell L. Whisenant and Grady Harris, Jr., as trustees of a trust styled, The Oklahoma County Utility Services Authority, praying for a consideration of the trust instrument and actions taken and proposed to be taken by the trustees under that instrument.

From a judgment holding the trust instrument valid and that a Mortgage Revenue Bond Indenture executed by the trustees to be within their powers and authority and approving all the actions of the trustees, the Board of County Commissioners of Oklahoma County and two intervening taxpayers have appealed.

The trustees of the above named trust alleged that it was formed as an express trust under the provisions of Section 175.-23, 60 O.S.1951, and that the defendants are those affected by the administration of the trust estate and Oklahoma County, a body corporate and politic, and a governmental subdivision of the State of Oklahoma, is the beneficiary of the trust and that this action was instituted because the County Attorney of Oklahoma County has asked that the validity of the trust and the proposed actions of the trustees thereunder be passed upon by this Court.

A copy of the trust instrument was attached to the petition, together with the acceptance of the beneficial interest thereunder by the Board of County Commissioners of Oklahoma County, February 16, 1955, for the purpose of furnishing utility services to the unincorporated areas of Oklahoma County.

It was alleged that an economic emergency existed because the incorporated municipalities of this county were unable to furnish water and fire protection to unincorporated areas of the county, resulting in housing construction in such areas being brought to a standstill, and that an urgent demand for both housing and commercial construction existed. The Declaration of Trust recites that it was formed " * * * under the laws of the State of Oklahoma (generally but not exclusively pursuant to Title 60, sections 176 to 180, inclusive, Oklahoma Statutes 1951, as amended, and to the Oklahoma Trust Act) * * *." The primary trust purpose was stated to be:

"To institute, furnish, provide and supply * * * in the presently unincorporated areas of Oklahoma County any and all improvements, services and physical facilities for the safeguarding of public health, the protection of persons and property, and the conservation and implementation of public welfare, of such kinds and characters that the same may be an authorized or proper function of the Beneficiary of this Trust, or by law made subject to the supervision of its governing body or of its officers, which said improvements, services and physical facilities may be supplementary or wholly extraneous to any * * * that presently is, or hereafter may be furnished, provided or supplied by or under the supervision of the Beneficiary."

It further provides for the acquisition and disposition of property by the trustees, the borrowing of money to provide funds, and that the net revenues, after payment of operating expenses and indebtedness, should be distributed to the beneficiary "without restrictions or limitations by the Trustees."

It provided for succession of trustees and other beneficiaries as follows: (1) Should some other governmental entity succeed the county in governmental authority, it should succeed to the beneficial interest; (2) If a part of the territory being served by the trust should come within the boundaries of a governmental entity charged with governmental functions in which the trust is engaged, such entity might succeed to the beneficial interest or become a joint beneficiary upon acceptance of such interest.

It is expressly provided that the trust shall have no authority to obligate the beneficiary in any manner. The term of the trust is fixed as the duration of the beneficiary, or the trustee may, with the approval of the Governor of Oklahoma, terminate the trust if all indebtedness is paid or waived by obligees.

On March 7, 1955, the trustees organized as a board and contracted to purchase two privately owned water properties to enable it to commence operations. To make a cash down-payment for these properties and to pay other expenses, the trustees entered into a Trust Mortgage Revenue Bond Indenture with the Fidelity National Bank & Trust Company of Oklahoma City as bond trustee, for the issuance of $166,000 of bonds secured by mortgage upon the properties purchased and their revenues.

There was attached to the petition a copy of the minutes of the meeting of the trustees held March 7, 1955, setting out all of the actions of the trustees here sought to have construed. The petition prayed the court to construe the trust instrument pursuant to Title 60 O.S.1951 § 175.23 to determine the validity of the trust, the Bond Indenture, the powers, duties, liabilities and rights of the trustees as to their previous and future actions and their liability to pay taxes on trust property out of the trust funds.

The Fidelity National Bank & Trust Company and R. J. Edwards, Inc., who had contracted to purchase the bonds, filed an answer adopting the allegations of plaintiffs' petition and prayed that the court decree the validity of all actions of the trustees, and the Metropolitan Water Company, the vendor of the properties purchased by the trustees, intervened and prayed that the trust and all proceedings thereunder be approved.

The Board of County Commissioners and the County Treasurer of Oklahoma County filed an answer and cross-petition demanding strict proof, denying the legality of the instruments and the proceedings had by the trustees and praying that they be decreed null and void and that all such instruments be cancelled.

Two taxpayers, residents of the areas served by the water systems proposed to be purchased by the authorities, James and Sylvia Geddes, intervened for themselves and on behalf of all other taxpayers similarly situated, challenging the validity of the trust, the authority of the County Commissioners to accept the beneficial interest, the proposed purchase contract and the right of the trustees to create the proposed indebtedness secured by and payable from the proposed water systems to be purchased, and their revenue. They prayed for a cancellation of all instruments involved.

The trustees, the Bank and R. J. Edwards, Inc., joined issues with cross-petitioners mentioned by answer.

May 20, 1955, a hearing was had and the court made certain findings of fact and conclusions of law. The facts found by the court were not controverted. The conclusions of law involved a discussion of the law questions here involved.

The court found generally in accord with the allegations set out in the petition. A summary of the findings is as follows:

That residential expansion of the area surrounding Oklahoma City and other municipalities in Oklahoma County has been rapid in recent years, requiring additional housing developments; that such expansion pressure has made it impossible for them to provide municipal utility services such as water, fire protection and sewerage disposal; in recent years municipalities have found it impossible to meet the needs of rapidly expanding suburban areas and the problem is not being met by private investment.

In view of the foregoing situation, the Board of County Commissioners of Oklahoma County accepted the beneficial interest in the trust above mentioned, created by one citizen from each commissioner's district. That these three citizens donated sufficient money to get the trust in operation and declared that they held all money and property involved for the trust beneficiary, Oklahoma County.

The trust was created to furnish utility services to the inhabitants of unincorpo-

rated areas in Oklahoma County, services and facilities for safeguarding the public health, the protection of persons and property and to promote generally the public welfare of such character as may be the authorized or proper function of the beneficiary of the trust.

The Declaration of Trust made the necessary provisions for continuity and for all administrative contingencies necessary to the proper functioning of the trust, and safeguarding its property and insuring the faithful performance of the trustees' duties.

That the Declaration of the Trust expressly provided no obligation of the trust shall ever become a liability of the beneficiary, Oklahoma County, and that should some other body succeed to the authority now vested in Oklahoma County, such body would become the beneficiary automatically.

The findings covered the Bond Indenture securing the loan for the purchase of two privately owned water properties, and mortgaging such property, and the net income therefrom, to secure the payment of the bonded indebtedness, and that the Bond Indenture expressly eliminates any liability of the beneficiary of the trust.

That the Bond Indenture requires court approval before the issuance of the bonds, of the validity of the trust and all transactions of the trustees with respect to all matters above set out and that the trust be declared exempt from all property taxation under the laws of Oklahoma.

Pursuant to the provisions of the Bond Indenture, this action was commenced by the trustees and all parties affected by the administration of the trust estate and all parties required by Section 175.23, supra, were made parties hereto except the Metropolitan Water Company, a corporation, which intervened as did said taxpayers.

The Board of County Commissioners of Oklahoma County required the trustees to answer, challenging the validity and effectiveness of the trust and all actions of the trustees above mentioned, to enable the court to consider and determine all controverted issues raised by the intervening taxpayers of the area now served by the water systems contracted to be purchased by the authority, in praying that the trust and all actions of the trustees be declared null and void.

The court found that the trust was legal and valid and also approved all of the actions of the trustees. The Board of County Commissioners, the beneficiary of the trust and the intervening taxpayers have appealed and submit the following questions:

The first question presented is whether a county may properly be the beneficiary of a trust for the performance of functions which the county has not been expressly authorized to perform in its own name. The Declaration of Trust creating "The Oklahoma County Utility Services Authority" recites that the trust was formed " * * under the laws of the State of Oklahoma (generally but not exclusively pursuant to Title 60, sections 176 to 180, inclusive, Oklahoma Statutes 1951, as amended, and to the Oklahoma Trust Act) * * *." The primary purpose of this trust was stated to be, as stated above, to provide and supply to the inhabitants of the presently unincorporated areas of Oklahoma County services and facilities to safeguard the public health, protect persons and property and promote the public welfare in so far as the same may be a proper function of the beneficiary of this trust, which is Oklahoma County.

Sections 177 to 180, supra, are as follows:

"§ 177. Such trusts may be created by written instruments, or by will. In the case of written instruments, the same shall be subscribed by the grantor or grantors and duly acknowledged as conveyances of real estate are acknowledged, and before the same shall become effective the beneficial interest therein shall be accepted by the Governor, if the State be the beneficiary, or by the governing body of any other beneficiary named therein, which power and authority of acceptance hereby is conferred upon the Governor and upon the governing bodies of the counties, municipalities, political and governmental subdivisions, and governmental agencies of the State. And

thereupon the said instrument or will, together with the written acceptance of the beneficial interest endorsed thereon, shall be recorded in the office of the county clerk of each county wherein is situated any real estate, or any interest therein, belonging to said trust, as well as in the county wherein is located the trust property or wherein is conducted its principal operations. Upon the acceptance of the beneficial interest by the beneficiary as hereinabove authorized and provided, the same shall be and constitute a binding contract between the State of Oklahoma and the grantor or grantors, or the executor of the estate of the testator, for the acceptance of the beneficial interest in the trust property by the designated beneficiary and the application of the proceeds of the trust property and its operation for the purposes, and in accordance with the stipulations specified by the trustor or trustors. Such trusts shall have duration for the term of duration of the beneficiary, or such shorter length of time as shall be specified in the instrument or will creating said trust."

"§ 178. The instrument or will creating such trust may provide for the appointment, succession, powers, duties, term and compensation of the trustee, or trustees; and in all such respects the terms of said instrument or will shall be controlling. If the said instrument or will make no provision in regard to any of the foregoing, then the general laws of the State shall control as to such omission or omissions."

"§ 179. The trustee, or trustees, under such an instrument or will shall be an agency of the State and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created. No trustee or beneficiary shall be charged personally with any liability whatsoever by reason of any act or omission committed or suffered in the performance of such trust or in the operation of the trust property; but any act, liability for any

omission or obligation of a trustee or trustees, in the execution of such trust, or in the operation of the trust property, shall extend to the whole of the trust estate, or so much thereof as may be necessary to discharge such liability or obligation, and not otherwise."

"§ 180. Any such trust may be terminated by agreement of the trustee, or if there be more than one, then all of the trustees, and the governing body of the beneficiary, with the approval of the Governor of the State of Oklahoma; Provided, that such trust shall not be terminated while there exists outstanding any contractual obligations chargeable against the trust property, which, by reason of such termination, might become an obligation of the beneficiary of such trust."

In 1953, there was enacted a statute expressly authorizing the acceptance by the State and its subdivisions of gifts of property. Sections 381 and 390, 60 Okl.St.Ann. are as follows:

"The legal capacity of the State of Oklahoma, and of each county, city, town and school district in the State, to take title or any interest therein, legal, equitable, or both, to any property, real, personal or mixed, by gift, testamentary or otherwise, as well as by purchase, is hereby specifically approved and affirmed. Laws 1953, p. 288, § 1."

"The board of county commissioners of each county of the State, as to such county, and the governing board of each city, town and school district of the State, as to each such governmental subdivision, is hereby authorized in its discretion to accept, upon behalf of such county, city, town or school district, any gift, testamentary or otherwise, whether unconditional or conditional, of any property, whether real or personal or both, to such county, city, town, or school district, or any institution, department or agency thereof; * * *."

The foregoing statutory provisions are pertinent in the consideration of the question as to the validity of the trust.

■ Our Constitution Article XVII, § 1, provides that "Each county in this State, now or hereafter organized, shall be a body politic and corporate." However, the corporate powers of counties have been limited by decisions of this Court to those fields expressly assigned to subdivisions of the State by the Legislature. Herndon v. Anderson, 165 Okl. 104, 25 P.2d 326.

By Sections 771–856k, 82 O.S.1951, the Legislature provided that "Every county in the State of Oklahoma is hereby authorized to create water improvement districts to provide for the construction of a water distribution system * * *." It also provides that the cost of such systems is to be defrayed by special assessments.

The Board of County Commissioners of each county is given similar authority with respect to fire protection districts, 19 O.S. 1951 §§ 901.1–901.25; and as to sewer improvement districts, 19 O.S.1951 § 871 et seq.

■ We think that when the Legislature assigned a field of governmental action to a State subdivision, here a county, as has been done as to fire protection, water distribution and sewerage, but has provided only a single method for the county to perform such functions, the character of the functions is not limited to the single method provided, but that the Legislature may properly provide for other methods of attaining the same purposes.

Section 176, supra, provides that "* * * Express trusts may be created * * * with the State, or any county * * * as the beneficiary thereof, and the purpose thereof may be the furtherance, or the providing of funds for the furtherance, of any authorized or proper function of the said beneficiary. * * *"

■ If a trust may be created for the furtherance of any "authorized or proper" function of a county, and counties are expressly authorized to function in the fields of furnishing water, fire protection and sewerage services for its inhabitants, and section 176, supra, provides that trusts may be created to perform "authorized or proper" functions with the county as beneficiary, we find no objection to the view that trusts are authorized by section 176 to perform authorized and proper functions of counties, and that the word "proper" means additional methods which may be authorized by the Legislature as was done by section 176 as above pointed out.

It is suggested that the public trust law does not authorize the acceptance of beneficial interest which is subject to being divested, or providing contingently for multiple public beneficiaries. Section 176, 60 O.S.1951, as amended in 1953, provides that any county may be the beneficiary and section 177 expressly provides that before the trust shall become effective, the beneficiary shall accept the beneficial interest, and upon acceptance it shall constitute a binding contract between all parties for the acceptance of the beneficial interest in the trust property.

■■ While it is true that the trust instrument permits additional beneficiaries to be added, or the beneficial interest to be taken from the county and vested in other governmental entities having jurisdiction of a territory, or a portion thereof, and authorizes later acceptance of the beneficial interest by governing authorities of the new entities affected, we can conceive of no valid objection to such a provision. It appears to be an effort to provide in advance for future contingencies. If in the future some other subdivision of the State should become vested with the powers and authorities now vested in counties, then such entities as may become vested with the functions of our present day counties, and be thus entitled to the beneficial interest now vested in counties, this would not appear to affect the present holding by a county of the beneficial interest. We find no merit in the contention that the beneficial interest now vested in Oklahoma County may not be properly transferred to some other subdivision of the State which may become burdened with the functions now vested in the county.

It is true that the Declaration of Trust enables other governmental entities to succeed or share in the beneficial interest. In Section 176, beneficiary is used in the singular. Does this exclude plural beneficiaries? Section 25, 25 O.S.1951, provides:

"Words used in the singular number include the plural, and the plural the singular, except where a contrary intention plainly appears."

Again, Section 391, 60 Okl.St.Ann., provides that a gift to the State and a county, and a city or town, shall make each a tenant in common "unless other proportions are distinctly specified in the instrument by which such gift is made".

The common law rule as to multiple or successive beneficiaries is set out in the Restatement of the Law of the American Law Institute, under Trusts, Section 113, as follows:

"There may be a single beneficiary or several beneficiaries of a trust. * * * The interest of several beneficiaries may be enjoyable simultaneously or successively * * *. Where a trust is created by the terms of which it is intended to give interests to several beneficiaries, the interest of some may be valid although the interests of others are invalid."

We conclude that none of the suggestions interfere with Oklahoma County as the sole beneficiary under the trust instrument involved, which has been accepted by the Board of County Commissioners of Oklahoma County. It has been suggested that the possibility of subsequent occurrences in the change of beneficial interest in the future would be rendered harmless by the doctrine of cy pres.

█ It is suggested that the trustees have no authority to create debts and mortgage the trust property as security. A foreclosure might result in wiping out the trust estate. We think this question is clearly answered by Section 175.24, subd. I, par. 2, 60 O.S.1951, which provides:

"Where a trustee is authorized by the trust agreement creating the trust or by law to pay or apply capital money subject to the trust for any purpose or in any manner, he shall have and shall be deemed always to have had power to raise the money required by selling, converting, calling in, or mortgaging or otherwise encumbering all or any part of the trust property for the time being in possession."

Is the indebtedness authorized to be created by the trustees in violation of Section 26, Article X of our Constitution? The beneficial interest vested in the county is a pure gift to the county. The gift is a conditional one, made upon certain conditions stipulated by the donor. If such conditions authorized the borrowing of money by the trustees, such right of the trustees inhered in the gift itself. The County Commissioners accepted the gift, but they were under no obligation to do so.

█ It is clearly provided in our trust laws, the Declaration of Trust and Bond Indenture, that no debt created by the trustees shall ever become an obligation of the beneficiary, Oklahoma County. Such debts are clearly not of the character of obligations as are prohibited by the Constitution. The debts prohibited generally are those of a governmental subdivision of the State named in the Constitution, and are chargeable to general governmental funds, for the payment of which resort may be made to taxation. The funds originally donated to the trust and the trust estate do not have their origin in public funds nor in the proceeds of taxation or the operations of the governmental beneficiary itself. The trust provides for the furnishing of certain utility services to large areas of Oklahoma County without the expenditure of any general governmental funds. The trustees are directed to pay to the county any surplus revenues accruing from the operations of the trust facilities, which would reduce the burdens of government to all citizens of the county. State ex rel. Kerr v. Grand River Dam Authority, 195 Okl. 8, 154 P.2d 946; Application of Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795.

█ It was held in Armstrong v. Sewer Improvement Dist. No. 1, Tulsa County, 201 Okl. 531, 199 P.2d 1012, 207 P.2d 917 and in Lowery v. Water Improvement Dist. No. 5, Tulsa County, 122 Okl. 116, 251 P.2d 748, that the State might select agencies other than governmental subdivisions mentioned in Section 26, Article X of the Constitution to perform State governmental

functions. In the case of In re Langeloth's Trust, 200 Misc. 551, 102 N.Y.S.2d 978, it was held that a trust for the benefit of the inhabitants of an unincorporated community to furnish them public services was a true charitable trust. This decision has been followed in many cases of different states, indicating that the trust under consideration could be created under the traditional rules of the common law, and independent of statutory provisions, to provide utility services to county residents and to provide money to be paid to the county to lighten its tax burdens.

10 Am.Jur., Charities, section 79, page 641, states:

"Likewise, it is a valid and enforceable charity to give funds for the erection of a public building, * * * for general municipal improvements, * * * for the provisions of a good and wholesome water supply for the city or community, for municipal fire equipment or for improvement of the municipal force. * * *"

In Bogert on Trusts and Trustees (1953) Vol. 2A, page 170, section 378, it is said:

"The governmental trust may forward social interest by requiring the trustees themselves to perform certain governmental functions, instead of by aiding existing governmental agencies in carrying on their activities. * * *"

And at page 163 of the same section, it is said:

"* * * It would seem, therefore, that a trust to furnish money to a government for its general governmental purposes would always be charitable, since all the objects of the particular government must be of widespread social interest."

Plaintiffs in error suggest that since the trustees of a trust created under the public trust statutes are "regularly constituted authorities" of the governmental beneficiary, indebtedness incurred by such trustees must be authorized as provided in Article X, § 26, of the Constitution. This is an additional question dealing with the authority of the trustees to incur indebted-

ness. Section 179, 60 O.S.1951, declares that the trustees of trusts created under the public trust statute "shall be * * * the regularly constituted authority of the beneficiary * * *", which suggests that the trustees are clothed with some official status as county authorities and that the proposed indebtedness created by them is of the nature treated in Article X, §§ 23, 26 and 27 of the Constitution. As stated above, we do not believe that the creation of indebtedness by the trustees here is a violation of the Constitution. It is expressly provided that the county shall be only the beneficiary and that it shall not be liable for any indebtedness created by the trustees.

 The trial court decreed that the trust property and the revenues are exempt from taxation. No part of the trust property or income therefrom can be diverted to private use. We think this question is settled by Section 382, 60 Okl.St.Ann., which provides:

"No gift, testamentary or otherwise, of any property, real or personal or both, or any interest therein, to the State of Oklahoma, or to any county, city, town, or school district in the State, or to any combination thereof, if accepted upon behalf of the State, county, city, town, or school district, by the officer, proper governing board or commission thereof, nor the transfer of title thereto in accordance with such gift, or the will or other instrument by which such gift is made, nor the privilege of making or receiving such a gift, nor any income or profits derived by such State, county, city, town or school district from any such property or its use or disposition thereof, shall be subject to any form of tax."

Section 6, Article X of the Constitution expressly provides that "all property * * * of counties * * * of this State * * * shall be exempt from taxation". This constitutional exemption was construed in State ex rel. City of Tulsa v. Mayes, 174 Okl. 286, 51 P.2d 266, where the court was considering the taxation of

property belonging to the Tulsa Water Department and located outside of the city. Under the Tulsa City Charter, this water agency was an independent agency and was held to be exempt from taxation.

Sections 176 to 180, inclusive, above set out, were amended by the Legislature in 1953 as an addition to our statutes on "Uses and Trusts" and these sections appear to have been enacted for the purpose of authorizing the creation of trusts for the furtherance of public functions and to promote the public welfare. Prior to the enactment of the above sections this Court held in Phillips v. Chambers, 174 Okl. 407, 51 P.2d 303, 304, that:

"An Oklahoma county has the power to accept a devise or bequest of property as a charitable trust and administer the same as trustee, provided the purpose of the trust is consistent with the purpose of the creation or existence of the county."

In the case before us the county is not to act as trustee, but as the beneficiary of the charitable trust, and then only after the governing body of the county accepted the beneficial interest.

In upholding the charitable trust wherein the county was to serve as trustee in Phillips v. Chambers, supra, the Court said in the body of the opinion:

"In further conclusion on this point we deem it appropriate to mention that the subject-matter of our decision is entirely within the control of the legislative branch of government, and should charitable trusts ever grow to such an extent in this jurisdiction that they become a menace to good government and the welfare of society, the Legislature may well correct and prevent their future and further creation. It is much better that if such correction be necessary, the same be accomplished by legislative enactment, which is prospective in its operation, than by judicial decision, which is retroactive in effect."

For the reasons stated the decree of the District Court of Oklahoma County is affirmed; and upon the showing of the existence of a public emergency, the plaintiffs in error shall have only ten days within which to file petition for rehearing.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, BLACKBIRD, and JACKSON, JJ., concur.