John SHIPP, Petitioner,

v.

**SOUTHEASTERN OKLAHOMA INDUS-
TRIES AUTHORITY et al.,**
Respondents.

No. 45529.

Supreme Court of Oklahoma.

June 27, 1972.

David M. Harbour, Oklahoma City, for petitioner.

James E. Work, Oklahoma City, of counsel, Shirk, Withington, Work & Robinson, Oklahoma City, for respondents.

LAVENDER, Justice.

This is an original proceeding in which John Shipp as a resident of McCurtain County, Oklahoma, seeks injunctive relief against a public trust, and the trustees thereof, designated as the "Southeastern Oklahoma Industries Authority." The State of Oklahoma is the designated beneficiary of the trust.

The trust was created by the Oklahoma State Chamber of Commerce, a corporation, and the beneficial interest therein was accepted upon behalf of the state by the governor thereof, in January of 1970, in accordance with the provisions of 60 O.S. 1961 § 176 and following, as then amended and supplemented.

Section 176 provided, and provides:

"Express trusts may be created in real or personal property, or either or both, or in any estate or interest in either or both, with the state, or any county, municipality, political or governmental subdivision, or governmental agency of the state as the beneficiary thereof, * * *, or the providing of funds for the furtherance, of any authorized or proper function of the said beneficiary. * * * *."

A copy of the instrument creating the trust (hereinafter called the trust indenture) is included in the record by stipulation of the parties. As stated therein, the *basic and primary purposes* of the trust are:

"To promote and to encourage the development of industry and commerce, and to further industrial, manufacturing, cultural, medical and educational activities within the territorial limits of that portion of the State of Oklahoma located in McCurtain, Choctaw, Pushmataha and LeFlore Counties, and in reasonably practical proximity thereto, *by instituting, furnishing, providing and supplying physical facilities, improvements and services* to the Beneficiary and to agencies, instrumentalities and subdivisions thereof and to inhabitants, owners and occupants of property, and to govern-mental, industrial, commercial and mercantile entities, establishments and enterprises, within said portion of the State of Oklahoma, to such extent and in such manner as now is or hereafter shall be a proper function of the State of Oklahoma as or if expressly authorized by law *for the furtherance, of the general convenience, welfare, public health, public safety, and economic development of said portion of the State and its inhabitants.*" (Emphasis supplied)

Other expressed purposes of the trust are to acquire, construct, install, administer and operate any property or property rights designed or needful in instituting, providing or supplying any of the improvements, facilities and services mentioned in connection with its primary purposes, and to provide funds for doing so, including the incurring of indebtedness, either unsecured or secured by the trust's assets and/or revenues.

The other essential facts, bearing upon the main issues presented herein, are alleged in the proposed petition and in the brief in support thereof substantially as follows. Purportedly in furtherance of the purposes of the trust, the trustees have determined to construct certain facilities for the transmission and disposal of sewage, waste and other deleterious substances, and to provide services in connection therewith for compensation. They have also determined to issue and sell revenue bonds, in the aggregate principal amount of $10,000,000 to $15,000,000, to provide funds for the purchase and acquisition by the trust of certain capital equipment for "pollution control" purposes. Such equipment is to be installed by the trust as a part of its proposed system for the transmission and disposal of sewage, waste and other deleterious substances. Net revenues from the facilities and services, after deducting expenses of operation, would be pledged to the payment of the bonded indebtedness.

Upon behalf of himself and all others similarly situated, the petitioner asks this court to assume jurisdiction and to perpet-

ually restrain and enjoin the trustees and the Authority from taking any further steps to issue or sell any bonds or any other form of evidence of indebtedness, or incurring any form of indebtedness, to provide funds for the purchase, acquisition, or installation of any such "pollution control" equipment.

In their briefs, the respondents say that the petitioner's statement of facts is essentially correct. However, it appears to be probable that the proceeds of the bonds would be used to finance the entire project contemplated by the trustees, and that they consider the entire project as being for "pollution control." We shall consider the matter in that light.

We consider the questions presented in this case to be of as much importance to the State of Oklahoma and the people thereof, and the need for an early determination of the questions to be as great, as in Fort v. Oklahoma Industries, Inc., et al. (1963), Okl., 385 P.2d 470, or in Meder v. City of Oklahoma City et al. (1960), Okl., 350 P.2d 916, or in Morris v. City of Oklahoma City et al. (1956), Okl., 299 P.2d 131. We assume jurisdiction on the basis of those cases.

In his third proposition, petitioner argues that the trust is void because of an alleged conflict of interest on the part of the individual trustees. However, in his principal contentions, he does not question the validity of a public trust with the State of Oklahoma as the beneficiary thereof, created for the basic purposes expressed in this trust indenture. He attacks only the authority of the trust to provide the facilities and services to be financed with proceeds of the proposed bonds. If he is correct on that point, the trust would not be authorized to incur any indebtedness, either secured or unsecured, to provide funds for the purchase or acquisition of such facilities.

His primary contention is that a trust with the State of Oklahoma as the beneficiary does not have that authority because the providing of "pollution control" equipment and facilities is not an "authorized" function of its governmental beneficiary.

He argues that governmental entities possess, and can exercise, only such powers and authority as have been granted to them by the Constitution and statutes of the state. The cases cited in support thereof involved the powers and authority of counties, cities or towns, and did not involve the powers and authority of the state.

He also argues that—regardless of the validity of the purposes for which a public trust is created under Section 176, supra— it can actually perform and/or provide funds for the performance of only such functions as its governmental beneficiary has, at the time of doing so, been *expressly* authorized to perform. He says that, when properly interpreted, Board of County Commissioners of Oklahoma County et al. v. Warram et al. (1955), Okl., 285 P.2d 1034, and Board of County Commissioners of Oklahoma County et al. v. Oklahoma City (1971), Okl., 484 P.2d 882, support this argument. In each of those cases, a county was the beneficiary of the public trust involved.

■ Petitioner's argument would extend to the State of Oklahoma in its capacity as a state, principles of law concerning the powers and authority of bodies politic and corporate which owe their very existence, as such, to the Constitution and statutes of the state. Sections 1, 4 and 8 of Article 17, and Sections 1 and 2 of Article 18, Oklahoma Constitution. That cannot logically be done.

■ As such corporations, counties, cities and towns, have no inherent power or authority, but possess, and can exercise, only those powers granted in express words or necessarily or fairly implied or incidental to the powers expressly granted. Development Industries, Inc., v. City of Norman (1966), Okl., 412 P.2d 953; Johnston v. Conner et al. (1951), 205 Okl. 233, 236 P.2d 987.

The State of Oklahoma came into existence as one of the states of the United

States under authority of Section 3 of Article 4 of the Constitution of the United States and an enabling act of the Congress dated June 16, 1906, on an equal footing with its sister states. Coyle v. Smith (1911), 221 U.S. 559, 31 S.Ct. 688, 55 L.Ed. 853. Its basic purposes and functions, and the reasons for its establishment by the people of Oklahoma Territory and Indian Territory, are "their protection, security, and benefit, and to promote their general welfare." Section 1 of Article 2, Oklahoma Constitution.

No citation of authority should be needed for the accepted principle that as one of the states of the United States the State of Oklahoma is a sovereign state possessing all of the power and authority of a sovereign *except as limited* by its own Constitution and that of the United States. The fact that the body in which the state's legislative power and authority is vested has not seen fit to exercise, upon behalf of the state, a particular power or function of the state cannot nullify such a power or function.

The rule concerning the powers and authority of counties, cities and towns, relied upon by the petitioner, and the reason for such rule, has no application to the sovereign State of Oklahoma. Consequently, the petitioner's interpretation of the two Oklahoma County cases cited by him, even if correct where a county, city or town is the beneficiary of the public trust involved, could have no application where, as here, the State of Oklahoma is the beneficiary of the trust. Thus, it is not necessary for us to determine herein whether or not his interpretation of those cases is correct.

The basic purposes and functions for which the State of Oklahoma was created by its people include the basic purposes and functions of this public trust as expressed in the instrument creating it. There can be no reasonable doubt that providing the facilities and services in question herein would aid in the accomplishment of those basic purposes and functions of the state and of this trust.

The State of Oklahoma, in performing its basic purposes and functions, is invested with the authority to promote and encourage the development of industry and commerce within the state, and to further industrial, manufacturing, cultural, medical and/or educational activities within the state. Doing so are "authorized" functions of the State of Oklahoma, as that term is used in 60 O.S.1961 and 1971 § 176.

The State of Oklahoma also possesses the authority to provide facilities and services to aid in the control or reduction of pollution of the air, land and/or waters in the state, and to provide facilities and services for the transmission and disposal of sewage, waste and other deleterious substances. Doing so are "authorized" functions of the State of Oklahoma, as that term is used in 60 O.S.1961 and 1971 § 176.

It follows that, insofar as 60 O.S. 1961 and 1971 § 176 is concerned, a public trust with the State of Oklahoma as the beneficiary thereof may be created for the purpose of performing any of those functions and/or providing funds for the performance of any of those functions.

Petitioner next calls' attention to the 1970 statute appearing as 60 O.S.1971 § 177.1, which provides:

"That no public trust shall engage in any activity or transaction that is not expressly authorized in the instruments or articles prescribing its creation except by express consent of the governmental agency or governmental entity that created said public trust."

In stating the purposes of this trust and the activities and transactions in which the trustees are authorized to engage, the trust indenture does not expressly mention pollution control, pollution control equipment, or facilities for the transmission or disposal of sewage, waste and other deleterious substances. Based thereon, the petitioner contends that, under this statute, this trust cannot engage in the activity or providing such facilities and services (or incur any

indebtedness to provide funds for the acquisition of such facilities) without the express consent of the State of Oklahoma.

We cannot believe that Section 177.1, supra, was intended by the Legislature to require, in practical effect, that each and every activity and transaction of the trustees contemplated by the trustor be mentioned specifically and precisely and exactly identified in any instrument creating a public trust.

If engaging in the general kind of activity or transaction in question may reasonably be said to be included in the authority expressly conferred on the trust or the trustees in the instruments creating a public trust, such activity or transaction is expressly authorized in the instrument, within the contemplation of Section 177.1, supra.

This trust and the trustees thereof are expressly authorized, in the instrument creating the trust, to engage in activities and transactions of the general kinds involved herein in carrying out the basic purposes of the trust. There can be no reasonable doubt that the basic purposes of this trust would be served by the trust's engaging in the activities and transactions in question herein. The state's express consent to the trust's engaging in those activities is not required by Section 177.1, supra.

Petitioner's remaining proposition is that this trust is void because of a conflict of interest in that all of the individual trustees are employees of a corporation that would be the biggest single user of the trust's contemplated facilities and services. The petitioner asserts that each of the five trustees is an employee of Weyerhaeuser Company, a Washington corporation. The respondents admit that the corporation is one of the biggest single prospective users of the trust's contemplated facilities and services. They note though that the trust indenture does not prescribe any qualifications for the original trustees, or for any trustee appointed by the remaining trustees upon the death, legal incompetency, or res-

ignation of a trustee, as provided in the trust indenture.

Woodward v. City of Anadarko et al. (1960), Okl., 351 P.2d 292, and Morrison v. Ardmore Industrial Development Corporation et al. (1968), Okl., 444 P.2d 816, cited by the petitioner, involved alleged merger of estates and termination of the trust because some, or all, of the trustees were, and their successors would be, officers or employees of the beneficiary city involved. This court denied the contention in each case, and did not mention conflict of interest in the Morrison case. Neither case tends to support the petitioner's argument based on alleged conflict of interest.

Petitioner also cites 60 O.S.1961 § 175.-11, and Cobb et al. v. Newman et al. (1949), 201 Okl. 318, 205 P.2d 858, as supporting his theory that this trust is void. That statute provides:

"No trustee shall directly or indirectly *buy or sell any property* for the trust * * * from or to himself, a relative, employer, partner, or other business associate; * * *." (Emphasis supplied)

In the Cobb case, this court held, in the third paragraph of its syllabus:

"A person cannot legally purchase on his own account that which his duty or trust requires to sell on account of another, nor purchase on account of another that which he sells on his own account. *He is not allowed to unite the two opposite positions of buyer and seller.* In such situation the law will avoid the transaction at the instance of the cestui que trust even though the sale was without fraud, the property was sold for its full value and no actual injury to his interests is proven. Such sale, however, is not void but voidable only and where the cestui que trust consents to or acquiesces in such transaction the sale is valid and binding upon him." (Emphasis supplied)

We find nothing in Section 175.11, supra, or in the Cobb case, which would affect the validity of this trust or the instrument creating it. The petitioner's argu-

ment that the trust is void, or even voidable at the instance of the beneficiary, cannot be sustained.

The record before us does not indicate that these trustees' employer has purchased, or agreed to purchase, any of the proposed bonds. So, it appears that the same argument, if directed to the proposed sale of the bonds, could not be sustained.

. The matter of the possible application of the cited statute or case to a lease of trust property, by these trustees in their fiduciary capacity, to their employer, or to any contract of any kind between these trustees, as such, to their employer, is not presented by the record before us.

Neither the cited statute nor the Cobb case would have any application to the situation presented in this proceeding to enjoin the issuance of the proposed bonds.

Writ denied.

BERRY, C. J., DAVISON, V. C. J., and HODGES, McINERNEY and BARNES, JJ., concur.

JACKSON and IRWIN, JJ., concur in result.

WILLIAMS, J., concurs in part, dissents. in part.