Ron SHOTTS, Petitioner,

v.

HUGH et al., Respondents.

No. 49686.

Supreme Court of Oklahoma.

June 4, 1976.

Fagin, Brown, Bush, Selvidge & Tinney, Inc., Oklahoma City, for respondents.

Ron Shotts, Oklahoma City, for petitioner.

DOOLIN, Justice.

This case presents important questions as to the proper functions of this state through public trusts formed by the authority of 60 O.S.1971 § 176 et seq, Trusts for Furtherance of Public Functions. § 176 Provides in pertinent part:

"(a) Express trusts may be created in real or personal property, or either or both, or in any estate or interest in either or both, with the state, or any county, municipality, political or governmental subdivision, or governmental agency of the state as the beneficiary thereof by the: (1) express approval of the Governor if the State of Oklahoma or any governmental agency thereof is the beneficiary; (2) express approval of two-thirds (⅔) of the membership of the governing body of the beneficiary if the county or a political or governmental subdivision thereof is the beneficiary; (3) express approval of two-thirds (⅔) of membership of the governing body of the beneficiary if a municipality or a governmental subdivision thereof is the beneficiary and *the purpose thereof may be the furtherance, or the providing of funds for the furtherance, of any authorized or proper function of the said beneficiary.* * * *" (Emphasis supplied).

This action involves the Oklahoma Housing Finance Agency (Agency) a public trust created May 1, 1975 and accepted by Governor David Boren on behalf of the State of Oklahoma as its beneficiary.

The broad purpose of the trust as enumerated in the Trust Indenture is to aid the state in providing adequate housing in accord with the needs of the people of Oklahoma and to eliminate the existence of a large number of sub-standard dwellings. More specifically the trust creates a Loans to Lenders Program (Program) which furnishes financing to selected lending institutions enabling such institutions to make available to the public lower cost new mortgage loans for the construction, acquisition, rehabilitation or improvement of residential housing. Program would be funded through the proceeds from the sale of revenue bonds in the amount of $28,825,-000.[1]

Agency, on March 1, 1976, gave notice it was accepting applications from lending institutions throughout the state to join in Program. Two savings and loans associations elected to accept and were approved.

The terms and conditions governing the use participating institutions may make of the proceeds of the revenue bonds as set forth in Agency's official statement are as follows:

| Purpose of Mortgage Loan | Minimum Term (Years) | Maximum Interest Rate |
|---|---|---|
| 1. Acquisition of 1-to-4 family dwelling | 15 | 2% above rate on the Loan |
| 2. Acquisition of multi-family dwelling | 15 | 2.5% above rate on the Loan |
| 3. Rehabilitation or improvement of 1-to-4 family dwelling or multi-family dwelling | 5 | no restriction |
| 4. Construction of 1-to-4 family dwelling or multi-family dwelling | no restriction | 4% above rate on the Loan |

Further, the loans must be on owner occupied dwellings within the state including condominiums and multi-family dwellings up to 35 units. The mortgage loans may be for new construction or rehabilitation and improvement of existing structures.

1. These bonds were to be issued and delivered on May 13, 1976, but this court stayed their issuance pending this decision.

Petitioner brings this original action as a resident and taxpayer of this state on behalf of himself and all other citizens of the State of Oklahoma to enjoin the issuance of the revenue bonds alleging the issuance of said bonds to be a violation of 60 O.S. 1971 § 176.

In order for Program to be valid, it must meet the guidelines of § 176 restricting the purpose of a public trust to one which may further, or provide funds to further, an authorized or proper function of the State of Oklahoma. The singular question presented therefore becomes whether lending money to a private lending institution with only minimal restrictions or controls in order that it may finance housing, is a proper function of the state. If it is not, as petitioner claims, the trust in its present form must fail.

Petitioner feels since there are no economic restrictions on any loan, or any provision as to location of dwellings affected, the proceeds could conceivably be used to finance $100,000 homes, condominiums or 35 unit apartment houses. He submits providing mortgage money for unrestricted purchase or construction of high income dwellings is not a proper public function of government as it does not benefit the general citizenry of the state.

Petitioner hastens to recognize the validity of trusts similar to this which results in a true benefit to the public by providing housing for the elderly, those displaced by urban renewal or other low income citizens. He further acknowledges the validity of public trusts resulting from specific legislative authority, enacted because a definite need has been perceived. But the present Program he points out could be used as a benefit only to persons with middle to high income and the two participating savings and loan institutions.

■ Any authorized function of the state is recognized by this court as a proper subject for a public trust such as providing airport facilities,[2] water transportation[3] and facilities for parking.[4] In addition this state possesses authority to provide services in reduction of pollution and for disposal of waste. Hence a public trust with State of Oklahoma as beneficiary for the purpose of providing funds for performance of these functions that promote and encourage development of industry and commerce within the state is permitted by § 176. *Shipp v. Southeastern Oklahoma Industries Authority*, 498 P.2d 1395 (Okl.1972). All of these particular functions are those that provide services and facilities that individuals cannot ordinarily provide for themselves.

Defendants do not raise any challenge to the views expressed by these decisions. They counter by stressing that providing safe, decent and adequate housing for the people of this state is also a proper function of the state. That is the purpose of this trust and such a purpose has been held to be valid by this court in *Boardman v. Oklahoma City Housing Authority*, 445 P.2d 412 (Okl.1968).

■ *Boardman* and the majority of the cases cited by defendants from other jurisdictions deal exclusively with low income housing. We do not deny governmental housing authorities and programs concerned with providing adequate low income housing have a public, indeed even a charitable purpose. Trusts for the benefit of the public may be established with a broad field of objectives as long as the objectives encompass a benefit to a large class of the public or lessen the burdens of government. *Board of County Commissioners of Oklahoma County v. Warram*, 285 P.2d 1034 (Okl.1955). The proceeds from the bonds issued by Agency in this specific case are

2. *Morris v. City of Oklahoma City*, 299 P.2d 131 (Okl.1956).

3. *Harrison v. Barton*, 358 P.2d 211 (Okl. 1960.)

4. *Application of Southern Oklahoma Development Trust*, 470 P.2d 572 (Okl.1970).

not being used to provide housing, but to lend money to private lending institutions.

■ Only two cases cited by defendants in support of the public purpose of Program are not specifically concerned with low cost housing. *New Jersey Mortgage Finance Agency v. McCrane*, 56 N.J. 414, 267 A.2d 24 (1970) was a suit brought to require the state treasurer to release funds appropriated *by the Legislature* to Agency for the New Jersey Loans to Lenders Program, in order to alleviate a declared housing shortage. In the present case there is no evidence offered of a housing shortage in Oklahoma and the Legislature has not acted, except to resolve against such action.

*Minnesota Housing Finance Agency v. Hatfield*, 297 Minn. 155, 210 N.W.2d 298 (1973), although not concerned solely with low income housing offered assistance in financing housing for persons of *low and moderate* income. Here as in the New Jersey case, the agency was created by legislative enactment. Further the proceeds from the revenue bonds issued were not loaned to financing institutions but rather directly to the housing corporation. The bonds were paid solely from earnings from the housing projects. The court held this type of financing, involving governmental function of protecting public health, had a valid public purpose.

We do not find these cases applicable or controlling here. Housing as a general category when it meets the requirements set forth in *Board of County Commissioners of Oklahoma County v. Warram*, supra, of encompassing a benefit to a large class of the public and lessening the burdens of government, may serve a public purpose. But in this case it is apprehensible that if a lending institution defaulted the burdens of government could be increased, not lessened.

Defendants assert the purpose of the Loans to Lenders Program is furtherance of an authorized public function of the state in that such will contribute to the development of residential housing in the state by increasing the availability of mortgage money thereby stimulating economic growth which contributes to the general welfare of all citizens of the state. However, because the trust indenture and its proponents recite a proper function does not make it so. We agree if the trust was formed and operated specifically to upgrade sub-standard housing and provide adequate low-income housing or was the result of legislative determination of need and public interest in relieving a definite housing shortage, it might be valid within the boundaries of § 176.

The establishment of public housing programs may be a proper function of the state, but this is not the function we are concerned with in relation to this particular trust. Program's primary function is to lend money.

We cannot see how this type of financial aid to a private institution, with no restrictions on who may borrow the available money, can create a net result of an upgrading of sub-standard dwellings or of a reduction in an alleged housing shortage. The present trust does not provide any guidance as to who may take advantage of the low interest loans. Although defendants would have us assume the money will be loaned to a "needy person who desires a roof over his head," it is still conceivable the institution would lend it where the most money could be made.

We therefore grant order as prayed for and enjoin and prohibit respondents from issuing and delivering Loans to Lenders Bonds 1976 Series A.

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, BARNES and SIMMS, JJ., concur.