PROPERTY
Providing assistance to persons or families of low to moderate income within a county in obtaining and financing housing by issuing obligations and undertaking a program of housing finance, constitutes an "authorized and proper function or purpose" of a public trust having a county as its beneficiary, within the meaning of 60 O.S. 176 [60-176] (1978). The Attorney General has considered your request for an opinion wherein you ask the following question: "Does providing assistance to persons or families of low to moderate income (as determined from demographic data and other objective criteria) within a County in obtaining and financing safe and healthful housing constitute an authorized and proper function or purpose of an Oklahoma Public Trust having a County as its beneficiary, within the meaning of 60 O.S. 176 [60-176] (1978), so as to justify said Public Trust in issuing obligations and undertaking a program of housing finance for the above purpose?" You have presented the following factual summary: The Cleveland County Home Loan Authority (the "Trust") was formed on October 10, 1978, pursuant to 60 O.S. 176 [60-176], et seq. (1978) (herein called the "Public Trust Act"). The county accepted beneficial interest in the Trust after having received certain information from county mortgage lending institutions and other persons regarding a shortage of decent housing, high interest rates, and a shortage of money for mortgage loans for such housing within the county. On October 19, 1978, the Trust approved the preparation of a demographic study to determine the extent of need for a program of housing finance assistance for low to moderate income families in the county. Subsequently, based on interim data, the Trust authorized issuance of its obligations to finance the home loan program described below upon completion of certain terms and conditions. The program as authorized would include the sale of tax-exempt revenue bonds the proceeds of which would provide funds for home loans to county families of low to moderate income. The loans would be secured by a first mortgage on owner occupied residential units in favor of the Trust. The homes financed would be repaid from mortgage loan payments of participating homeowners through a trustee bank. The bonds would be further secured by capitalized reserves and mortgage insurance. The loans would be originated and serviced by mortgage lending institutions for which they would be paid origination and servicing fees. The loans and mortgages would be assigned by the Trust to a bank which will serve as trustee for the benefit of the bondholders. The size of the bond issue would be determined by the Trust with approval of the county after review of the demographic data and after obtaining information as to the amount of loan funds that could be placed by lending institutions within a reasonable time. The bonds would be limited obligations of the Trust and would be payable solely out of bond proceeds, revenues and other amounts derived by the Trust from the mortgage loans acquired with bond proceeds. The bonds and the interest thereon would not constitute an indebtedness, liability, general or moral obligation or a pledge of the faith or loan of credit of the county. The Trust has determined which persons or families qualify for "low to moderate" income status. Based on its analysis of demographic data and other objective factors discussed below (set out in the Amended Trust Indenture and in a resolution approved by the county), the Trust has established a combined annual adjusted family income of $19,800.00 as the maximum qualifying income for "low to moderate" income persons. The county has approved this determination. In Shotts v. Rice, 551 P.2d 252 (Okla. 1976), the Supreme Court prohibited the Oklahoma Housing Finance Agency from issuing and delivering Loans to Lenders Bonds 1976 Series A on grounds that the lending of publicly borrowed monies to private lending institutions with only minimal restrictions or controls to finance housing was not a proper public function of the State. The Court stated that if the public trust had been formed and operated specifically to upgrade substandard housing and provide adequate low income housing or was the result of legislative determination of need and public interest in relieving a definite housing shortage, it might have served a valid public purpose. Shortly after the Shotts case, the Legislature approved amendments to the Public Trust Act. The amendments included the following: "Trusts created under the provisions of 60 O.S. 176 [60-176] through 60 O.S. 180.55 [60-180.55] of Title 60 hereof or any amendments or extensions thereof shall not include any trust purpose, function nor activity: in any wholesale outlet, unless said wholesale outlet is located on the same premises with and is a direct part of the industry; nor shall it include a retail outlet unless said retail outlet is operated in conjunction with and on the same premises as the industrial, manufacturing, cultural, recreational, parking, transportation or airport facility; nor shall it include a residential enterprise or function except as provided in Section 13 hereof. (60 O.S. 178.4 [60-178.4] (1978)) "The provisions of Sections 9, 10, 11 and 12 of this act shall not affect: public trusts operating facilities for the aged or disabled persons by non-profit, religious or benevolent organizations; public trusts operating county, municipal or nonprofit hospitals; public trusts operating college or educational dormitories or student housing facilities; trusts formed for the purpose of constructing buildings for local units of the Department of Institutions, Social and Rehabilitative Services under the provisions of 56 O.S. 189a [56-189a] (1971); public trusts carrying out redevelopment, rehabilitation and conservation activities in accordance with an approved urban renewal plan, provided property owned by said trust shall not be exempt from ad valorem taxation for a period exceeding five (5) years; trusts created under the provisions of 2 O.S. 157.1 [2-157.1] through 2 O.S. of [2-of] the Oklahoma Statutes or other trusts created for the same purpose. This act shall not prevent public trusts from administering a housing program pursuant to a contract with an agency of the United States Government or the State of Oklahoma; or prevent public trusts from financing housing programs, provided said programs involved only property that is subject to ad valorem taxation." (Emphasis supplied). (60 O.S. 178.6 [60-178.6] (1978)) In addition, 60 O.S. 176 [60-176](a) was amended to provide in pertinent part, as follows: "Express trusts may be created to issue obligations and to provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of the state or of any county or municipality in real or personal property, or either or both, or in any estate or interest in either or both, with the state, or any county or municipality as the beneficiary thereof. . . ." (Emphasis supplied) The first two sections make it clear that the Legislature has determined that the financing of housing, so long as it involves property subject to ad valorem taxation, is a proper purpose for a public trust in Oklahoma. This determination and expression was made subsequent to the Shotts decision. In Board of County Commissioners v. Warram, 285 P.2d 1034 (Okla. 1955), cited with approval in the Shotts decision, the Oklahoma Supreme Court held that when the Legislature has assigned a field of governmental action to a state subdivision such as a county, but has provided only a single method for the county to perform such functions, the character of the functions is not limited to the single method provided, but the Legislature may properly provide for other methods of attaining the same purposes. Moreover, in discussing the "authorized and proper functions" language in 60 O.S. 176 [60-176] as it then existed, the Court stated: ". . . We find no objection to the view that trusts are authorized by 60 O.S. 176 [60-176] to perform authorized and proper functions of counties, and that the word 'proper' means additional methods which may be authorized by the Legislature as was done by 60 O.S. 176 [60-176] as above pointed out." (Emphasis supplied) 285 P.2d 1034, 1040. Since the Legislature has heretofore, by its adoption of the Housing Authorities Act, 63 O.S. 1051 [63-1051], et seq. (1971), declared that assistance to residents in obtaining adequate housing is a proper function of counties, a view affirmed by the Court in the Shotts decision, 551 P.2d at 254, and since the Legislature by the adoption of 60 O.S. 178.6 [60-178.6], has in effect declared that housing finance functions may be performed by public trusts, then it appears there is clear authority for public trusts with counties as beneficiaries to engage in housing and housing finance functions. The question is, therefore, whether the proposed financing is a valid use of the Public Trust Act in that a valid public purpose is served by the program. The facts presented by you in the summary are considerably different from those presented to the Supreme Court of Oklahoma in the Shotts case. First, as noted above, the Legislature has specifically declared since the Shotts case that public trusts may be properly used to finance housing. Since that Act, by its very terms, delegates the determination of a proper public purpose to local legislative units, it is significant that the Legislature chose after the Shotts decision to specifically enumerate housing financing as a valid trust purpose. Further, based on its own independent evaluation, and the judgment of the trustees, after an examination of demographic data relating to the county, the county has also approved a maximum adjusted combined family income for persons of low to moderate income of $19,800.00 for participation in the program. It is, therefore, the opinion of the Attorney General that your question be answered as follows: Providing assistance to persons or families of low to moderate income within a county in obtaining and financing housing by issuing obligations and undertaking a program of housing finance, constitutes an "authorized and proper function or purpose" of a public trust having a county as its beneficiary, within the meaning of 60 O.S. 176 [60-176] (1978). (GERALD E. WEIS) (ksg)