Dear Senate Williams,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
To what extent may a public trust, created pursuant to theTrusts for Furtherance of Public Functions Act (60 O.S.176-60 O.S. 180.4 (1991-1999)) having more thanone county as its beneficiary, issue revenue bonds, the proceedsof which will be used to finance the acquisition of residentialproperties not within the boundaries of the beneficiary counties?
¶ 1 On March 1, 2000 the Oklahoma Housing Development Authority ("Authority"),[1] a trust created pursuant to 60 O.S.176-60 O.S. 180.4 (1991-1999) (Trusts for Furtherance of Public Purposes Act, hereinafter "the Act"), placed a legal notice in the Tulsa World of its intention to issue $200,000,000.00 in Multi-family Housing Facility Bonds. These bonds are to be used to finance the acquisition of multi-family housing facilities in Grady, Cleveland, Canadian, Oklahoma, Comanche, Stephens, Muskogee, Creek, Wagoner and Tulsa counties. The Authority has as its beneficiaries Grady and Muskogee counties. You have asked this office to determine to what extent a public trust such as the one described above may issue its revenue bonds to finance acquisition of residential properties not located within the beneficiary counties.
¶ 2 A general overview of public trusts is appropriate. The Act provides for the creation of trusts having the state, counties or municipalities, or any combination thereof as beneficiaries. These trusts may issue obligations to provide funds "for the furtherance and accomplishment of any authorized and proper public function." 60 O.S. 176(A) (1999).
¶ 3 If the beneficiary of the trust is to be a county or municipality, the express approval of two-thirds (2/3) of the membership of the governing body of the beneficiary county or municipality is required. See 60 O.S. 176(A)(2), 60 O.S.176(A)(3) (1999). Under the Act, no indebtedness or obligation can be created by a public trust whose beneficiary is a county or municipality, "until the indebtedness or obligation has been approved by a two-thirds (2/3) vote of the governing body of the beneficiary." Id. 176(E). The trust indenture referred to in your question provides that the purpose of the trust is "to assist the Beneficiaries, governmental agencies and private enterprises . . . in providing, constructing, acquiring, rehabilitating or improving adequate housing for low and low to moderate income residential use . . . within and without the territorial limits of the Beneficiaries." Trust Indenture (Sept. 15, 1997) (On file at Grady County Courthouse, Oklahoma, book 2974, page 386.)
¶ 4 In Shotts v. Hugh, 551 P.2d 252 (Okla. 1976), the Oklahoma Housing Finance Authority, a public trust having the State of Oklahoma as its beneficiary, was prohibited by the Supreme Court from issuing its revenue bonds to provide capital to savings and loan institutions, which in turn were to make loans to finance the construction of housing projects by private developers.
¶ 5 In making its decision the Court relied on Board of CountyCommissioners of Oklahoma County v. Warram, 285 P.2d 1034
(Okla. 1955). The Warram decision is instructive as to the parameters under which any public trust must operate. In 1955 a trust was created having Oklahoma County as its beneficiary. The stated purpose of the trust was to furnish utility service to the unincorporated areas of Oklahoma County. The trustees contracted to purchase two privately owned water properties to enable the trust to start operations. The validity of the trust was challenged.
¶ 6 On appeal, the Supreme Court reviewed whether a county may be the beneficiary of a trust with the performance of functions which the county has not been expressly authorized to perform in its own name. The Court cited Herndon v. Anderson,25 P.2d 326 (Okla. 1933) for the proposition that corporate powers of counties are limited to those fields expressly assigned to subdivisions of the State by the Legislature.[2] The Court went on to opine that the methodologies provided by the Legislature were not the exclusive means by which the public function could be performed:
 "We think that when the Legislature assigned a field of governmental action to a State subdivision, here a county, as has been done as to fire protection, water distribution and sewerage, but has provided only a single method for the county to perform such functions, the character of the functions is not limited to the single method provided, but that the Legislature may properly provide for other methods of attaining the same purposes.
* * * * * * *
 "If a trust may be created for the furtherance of any "authorized or proper" function of a county, and counties are expressly authorized to function in the fields of furnishing water, fire protection and sewerage services for its inhabitants, and section 176, supra, provides that trusts may be created to perform "authorized or proper" functions with the county as beneficiary, we find no objection to the view that trusts are authorized by section 176 to perform authorized and proper functions of counties, and that the word" proper" means additional methods which may be authorized by the Legislature as was done by Section 176 as above pointed out."
Warram, 285 P.2d at 1040 (emphasis added).
¶ 7 The Warram decision was interpreted by the Shotts Court as providing the following standard for operation of public trusts:
 "Trusts for the benefit of the public may be established with a broad field of objectives as long as the objectives encompass a benefit to a large class of the public or lessen the burdens of government."
Shotts, 551 P.2d at 254.
¶ 8 The court specifically found in Shotts that the proceeds from the bonds issued were not being used to provide housing, but instead to lend money to private institutions. For that reason, the specific transaction was invalidated. Since the Shotts andWarram decisions, Section 60 O.S. 178.6 of Title 60 has been added, which specifically provides for housing and housing programs by public trusts. Section 178.6 provides:
 "A public trust with a city, county, or state as the beneficiary thereof may issue its evidences of indebtedness for the purpose of financing housing or housing programs as same represent an authorized and proper public function for public trusts."
Id.
¶ 9 After the Shotts decision and after the statutory amendment, the Supreme Court reviewed a situation wherein a housing authority created at 63 O.S. 1991 and Supp. 1999,1051-1084, (The Oklahoma Housing Authorities Act) sought to operate outside its geographical boundaries. The Court made the following observation regarding the Shotts case inApplication of H.L. Goodwin, 597 P.2d 762 (Okla. 1979):
 "This litigation was no doubt precipitated by our decision in Shotts v. Hugh where we reaffirmed our commitment to the view that providing safe, decent and adequate housing for the people in this state constitutes a proper public function. . . . Shortly after our decision in Shotts the Legislature amended the Public Trust Act by expressly authorizing trusts to be created for the purpose of providing financing of public housing projects.
* * * * * * *
 "The scheme we considered in Shotts may be characterized broadly as one providing lenders with unrestricted publicly-generated funds. In this sense the scheme lacked the necessary public purpose Nexus. . . .
 "We reject the Authority's contention that it may operate beyond the geographical boundaries of the county. . . . Housing authorities are a creature of the entity which gives them birth. Under the provisions of 63 O.S. 1058 (1971), their authority must be deemed coextensive with the jurisdictional boundaries of the creating governmental entity."
Id. at 765-67 (footnotes omitted).
¶ 10 Section 60 O.S. 178.6 of Title 60 does not specifically limit public trusts to financing housing projects or housing programs within the jurisdictional limits of the beneficiary, or only to alleviate housing shortages or to provide shelter for low-to-moderate income persons. The statute generally provides for "financing housing programs" and makes such programs "an authorized and proper public function for public trusts." Id.
As discussed above, a public trust can be formed under the Trusts for Furtherance of Public Purposes Act for the furtherance and accomplishment of any authorized and proper public function of its beneficiaries.
¶ 11 What the Goodwin case did not answer was whether a public trust can finance housing programs outside the beneficiary counties when the trust operates not as a Title 63 authority, but pursuant to the statutory authority found at 60 O.S. 178.6
(1999). As stated above, a public trust may operate to further any authorized and proper public function of its beneficiary. Providing housing to potential purchasers of multi-family housing would seem to fall within the broad definition of housing programs authorized by Section 60 O.S. 178.6. There must, however, be some benefit provided to the beneficiary counties from the program. The Warram case has been cited often for the proposition that a public trust must operate in a manner which benefits a large class of the public or lessens the burdens of government. See Warram, 285 P.2d at 1042. In the context of a county beneficiary public trust or a public trust having multiple counties as its beneficiary, the Warram test allows only for functions which provide a benefit to the beneficiary counties or lessen the governmental burdens of the beneficiary counties. This could, in the appropriate factual setting, be accomplished by programs operating outside the county. For example, where projects outside the county provide economic benefits to the beneficiary, such as additional jobs or housing for county residents, there would be a benefit to the county. However, a project which merely uses a trust to generate fees from providing a financial vehicle with no other economic benefit to the beneficiary county from the project itself does not provide sufficient benefit to the county or lessen the burden of county government as required by the Warram standard.
¶ 12 The extent to which a public trust can operate within or without its jurisdictional boundaries is governed by the Warram
standard. Trust activities must be of some benefit to the citizens of the beneficiary, or lessen the burdens of government of the beneficiary. The Public Trust Act is not an open-ended authorization for a public trust to engage in any business activities. Whether a particular transaction or project meets theWarram test is a question of fact that cannot be addressed in an Attorney General Opinion. See 74 O.S. 18b(A)(5) (1999).
¶ 13 It is, therefore, the official Opinion of the AttorneyGeneral that:
A public trust created pursuant to the Trusts for Furtherance ofPublic Functions Act, 60 O.S. 176-60 O.S. 180.4(1991-1999), having more than one county as its beneficiary, mayissue revenue bonds to finance the acquisition of residentialproperties not located within the boundaries of the beneficiarycounties consistent with the standard enunciated in Board ofCounty Commissioners v. Warram, 285 P.2d 1034 (Okla. 1955):The transaction must provide a benefit to a large class of thepublic within the beneficiary counties or lessen the burdens ofgovernment within the beneficiary counties.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL
[1] The Oklahoma Housing Development Authority should not be confused with the Oklahoma Housing Finance Agency. The Housing Finance Agency is a public trust having the State of Oklahoma as its beneficiary.
[2] The proposition that political subdivisions, including counties, possess only the authority delegated to them by the State was again recognized in Shipp v. Southeastern OklahomaIndustries Authority, 498 P.2d 1395 (Okla. 1972). The Court stated:
 "Counties, cities and towns, have no inherent power or authority, but possess, and can exercise, only those powers granted in express words or necessarily or fairly implied or incidental to the powers expressly granted."
Id. at 1398.