Application of SOUTHERN OKLAHOMA DEVELOPMENT TRUST for Approval of $500,000 in Southern Oklahoma Development Trust First Mortgage Revenue Bonds, Series A, and Bond Indenture for Issuance Thereof.

No. 44165.

Supreme Court of Oklahoma.

June 12, 1970.

As Corrected July 6, 1970.

Charles R. Nesbitt, and Robert N. Naifeh, Oklahoma City, for petitioner Oklahoma Southern Development Company.

DAVISON, Justice.

In this original proceeding the petitioner Southern Oklahoma Development Trust, petitions this court to assume original jurisdiction and determine whether the Trust has the legal power to construct, own and operate a parking facility in the City of Ada, Oklahoma; determine whether the proceedings of the Trust and its trustees had in connection with the authorization and issuance of certain First Mortgage Revenue Bonds are regular and in compliance with the law and the provisions of 60 O.S.1961, §§ 176–180; and determine the validity of the provisions of the Bond Indenture adopted by the trustees for the issuance and payment of the bonds, under the Constitution and Laws of Oklahoma.

Notice of the filing of the above application and of the presentation thereof to this court has been duly given. No protest or contest has been filed.

In view of the public importance of the matters involved and the need for an early decision we accept original jurisdiction of the proceeding.

The proceeding presents a situation that in some respects is different from similar matters previously before this court involving the validity of acts of public trusts and their bonds.

In 1965 the Legislature enacted the Interlocal Cooperation Act, 74 O.S.Supp.1965, §§ 1001–1008. The Act provides in part (§ 1001) that its purpose is to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors influencing the needs and development of local communities. It empowers public agencies to enter into agreements (§ 1004), providing for joint and cooperative action to exercise and enjoy the powers, privileges or authority exercised or capable of exercise by a public agency. It also (§ 1004) specifies the essential elements of the agreement and authorizes the establishment of a separate legal entity to conduct the joint and cooperative undertaking.

"Public agency" as defined in the Act (§ 1003), include "any political subdivision of this state; any agency of the state government or of the United States."

Pursuant to the Interlocal Cooperation Act the Counties of Atoka, Bryan, Carter, Coal, Garvin, Johnston, Love, Marshall, Murray and Pontotoc, acting through their Boards of County Commissioners, and various cities in said counties, including the City of Ada in Pontotoc County, by written agreement effective January 1, 1967, formed the Southern Development *Association*, to function under the Act. It is provided

therein that the Association may form legal entities such as corporations or trusts to promote and develop specific projects. In accordance with the requirements of the Act (§ 1004) the agreement was submitted to and was approved by the Oklahoma Attorney General and was filed (§ 1005) with the Oklahoma Secretary of State.

Thereafter, on October 12, 1967, under the provisions of 60 O.S.1961, §§ 176–180, known as the Public Trust Law, the Association and one Leon Biddy, as Trustor, formed the Southern Oklahoma Development *Trust,* petitioner herein, with seven trustees, and the State of Oklahoma as beneficiary. The Governor of the State of Oklahoma, Dewey F. Bartlett, under authority of 60 O.S.1961, § 177, duly accepted the beneficial interest in the trust on behalf of the State of Oklahoma. On March 27, 1970, a Supplement to the above trust was duly executed and accepted in the same fashion and with the same formality as the original trust instrument.

In the original trust instrument of October 12, 1967, the stated purposes provided in part that they were, "To promote the development of industry and culture and industrial, transportation, communication, manufacturing, cultural, tourism, recreational, health and educational activities and facilities within and without the territorial limits of The Southern Oklahoma Development Association and to thereby provide * * * additional employment and activities * * *, of benefit to the cities and counties embraced therein. Additional purposes provide in detail for the purchase, acquisition, lease and construction of properties and facilities for the accomplishment of the above quoted goals, and for the procurement of funds necessary to defray the expenses connected therewith. The Supplement thereto provided specifically for the construction and providing of a parking facility in Ada, Oklahoma.

The Trust, by Resolution and pursuant to the terms of a First Mortgage Bond Indenture, proposes and intends to issue and sell First Mortgage Revenue Bonds, Series A,

in the aggregate principal amount of $500,-000.00, in bond denominations of $1000.00 each, and use the proceeds to acquire land and build a parking facility in Ada, Oklahoma. ·The bonds to be secured by a first mortgage upon the parking facility with provision for protection and enforcement of the mortgage lien. The petition herein recites that the Trust will also receive a federal grant of $444,500.00 from the Economic Development Authority to use for the above purpose.

■ ·From our examination of the Interlocal Cooperation Act, supra, and of the Agreement whereby the Association was formed we conclude that the Association was authorized to form the Trust. The Act authorizes the Association to form a separate legal or administrative entity, and the Agreement, supra, made under the Act, expressly provides for the creation of a trust to promote and develop specific projects.

As stated above, the State of Oklahoma is the beneficiary of the Trust. Title 60 O.S.1961, § 176, of the Public Trust Act, permits creation of a trust with the State as the beneficiary where "the purpose thereof may be the furtherance, or the providing of funds for the furtherance, of any authorized or proper function of the said beneficiary." This presents the question of whether, under the present circumstances, it is a proper function of the State to construct and operate a parking facility for public purposes. Of·course, this question must be considered in the light of the public nature of the enterprise and the public economic benefits sought by means of the parking facility.

Our Constitution, Art. 2, § 31, states that, "The right of the State to engage in any occupation or business for *public purposes* shall not be denied nor prohibited," (emphasis supplied) except in certain situations not applicable here.

This power of the State to engage in an occupation or business for public purposes was recognized in Grand Hydro v. Grand River Dam Authority, 192 Okl. 693, 139 P.2d 798, 802, 803, where we said the State may supply hydro-electric power.

However, the present situation is not one where the State itself will actually engage in the business of constructing and operating the parking facility. This will be done by the Trust. Under the provisions of 60 O.S.1961, § 179, the Trust "shall be an agency of the State and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created."

■ Also, there can be no doubt that the parking facility is for "public purposes." In City of Shawnee v. Williamson, Okl., 338 P.2d 355, we held that a public municipal parking lot owned exclusively by a municipality is a "public utility." We see no reason why the present parking facility does not have the same public character. Furthermore, the express purposes of the Trust, supra, are to promote and provide industrial and cultural facilities and thereby benefit and strengthen the economy of the cities and counties within the territory of the Association. In Harrison v. Claybrook, Okl., 372 P.2d 602, 605, we cited Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80, 83, for the proposition that there was a tendency to broaden the scope of activities which may be classed as involving a public purpose, and that it probably reached its broadest extent under the view that economic welfare was one of the main concerns of the city, state and federal governments.

We conclude that the Trust has the power to construct, own and operate the contemplated parking facility.

We now turn to the question of the regularity and validity of the Trust proceedings for the issuance and sale of the bonds.

As heretofore stated, the Trustees of the Trust adopted a resolution authorizing the issuance of $500,000.00 in bonds with denominations of $1000.00 each, and prepared a Bond Indenture prescribing the terms of the bonds and the provisions for securing the payment thereof and for redemption of the bonds. Attached thereto is a copy of

a letter of bond counsel approving the proceedings and the bond indenture.

■ The Declaration of Trust provides for issuance of bonds to be secured by the property of the Trust. It is well settled that pursuant to equitable principles developed as a part of the common law of Oklahoma, that a public trust may lawfully issue its bonds to be repaid from income or revenue. Fort v. Oklahoma Industries, Inc., Okl., 385 P.2d 470, 472.

The bonds when issued are to be paid solely from the assets of the Trust Estate and from the revenues coming into the hands of the Trust Estate, and said bonds do not create or constitute an obligation or indebtedness of the beneficiary, the State of Oklahoma, or of the Trustees of the Trust.

■ Based upon our examination of the petition herein and the exhibits and instruments involved, it is our conclusion that the Bond Indenture is a valid and binding instrument in accordance with its terms, and the bonds issued pursuant to the Bond Indenture will be valid and binding obligations of the Trustees in accordance with their terms.

Time for filing of petition for rehearing is limited to five (5) days from the promulgation of this opinion.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, BLACKBIRD, JACKSON, HODGES and LAVENDER, JJ., concur.