Dear Commissioner Fields:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Under 29 U.S.C. § 652(5) and other provisions of the federal Occupational Safety and Health Review Act, [1] ("OSHA Act"), the federal Occupational Safety and Health Administration ("OSHA") has no authority to inspect projects where the employer is "any State or political subdivision of a State." In this context, is an employer that is an Oklahoma public trust created under 60 O.S. 2001 Supp. 2009, §§ 176 — 180.4 or 19 O.S. 2001, §§ 904.1[19-904.1] — 904.10, considered a "political subdivision" and thus exempt from OSHA inspection?
Your question arises because of uncertainty as to which agency, the Oklahoma Department of Labor ("Department") or OSHA, has jurisdiction to perform inspections on jail construction or other projects performed by an Oklahoma public trust, particularly where asbestos abatement is involved. If a public trust is not a "State or political subdivision" under the OSHA Act then OSHA would have authority to perform needed construction inspections on projects being built by such a trust. Otherwise, the Department has jurisdiction.
Under 29 U.S.C. § 652(5):
 The term "employer" means a person engaged in a business affecting commerce who has employees, but does not include the United States (not including the United States Postal Service) or any State or political subdivision of a State.
Id. (emphasis added). OSHA has inspection authority as to private
employers, i.e., employers that are not "State[s] or political subdivision[s] of . . . State[s]."
OSHA has adopted rules for implementation of the OSHA Act, including guidelines for determining what constitutes a political subdivision:
 (a) General. The definition of the term "employer" in section 3(5) of the Act excludes the United States and States and political subdivisions of a State:
 . . . .
 (b) Tests. Any entity which has been (1) created directly by the State, so as to constitute a department or administrative arm of the government, or (2) administered by individuals who are controlled by public officials and responsible to such officials or to the general electorate, shall be deemed to be a "State or political subdivision thereof" under section 3(5) of the Act and, therefore, not within the definition of employer, and, consequently, not subject to the Act as an employer.
 (c) Factors for meeting the tests. Various factors will be taken into consideration in determining whether an entity meets the test discussed above. Some examples of these factors are: Are the individuals who administer the entity appointed by a public official or elected by the general electorate? What are the terms and conditions of the appointment? Who may dismiss such individuals and under what procedures? What is the financial source of the salary of these individuals? Does the entity earn a profit? Are such profits treated as revenue? How are the entity's functions financed? What are the powers of the entity and are they usually characteristic of a government rather than a private instrumentality like the power of eminent domain? How is the entity regarded under State and local law as well as under other Federal laws? Is the entity exempted from State and local tax laws? Are the entity's bonds, if any, tax-exempt? As to the entity's employees, are they regarded like employees of other State and political subdivisions? What is the financial source of the employee-payroll? How do employee fringe benefits, rights, obligations, and restrictions of the entity's employees compare to those of the employees of other State and local departments and agencies? In evaluating these factors, due regard will be given to whether any occupational safety and health program exists to protect the entity's employees.
Regulations Relating to Labor, 29 C.F.R. § 1975.5 (West, Westlaw current through Oct. 9, 2009). Brock v. Chicago Zoological Society, 820 F.2d 909
(7th Cir. 1987), is instructive as to interpretation of this rule. Brock
held a forest preserve district created by statute was an "administrative arm of the government," while a private, nonprofit zoological society was not. Id. at 911-13 (citing 29 C.F.R. § 1975.5(b)(1)). See also NLRB v.Natural Gas Util. Dist., 402 U.S. 600, 603 (1971) (holding a gas distribution district to be a "political subdivision"); NLRB v. AustinDevelopmental Ctr., 606 F.2d 785, 789 (7th Cir. 1979) (finding a nonprofit corporation was not a political subdivision).
Cases involving the National Labor Relations Board ("NLRB") are helpful by analogy in determining the status of an entity as a "political subdivision" under the OSHA Act, since the definition of the term "employer" in 29 U.S.C. § 152(2) (part of the NLRB statutes) is very similar to that of the OSHA statutes. The NLRB governs activities of private, not governmental, employers and many reported cases have litigated, in an NLRB context, what is or is not a "political subdivision." See, e.g., StarTran, Inc. v. Occupational Safety HealthReview Comm'n, 290 Fed. Appx. 656, 665-67, 2008 WL 3342714 (5th Cir. Aug. 11, 2008) (unpublished). StarTran discussed at length the status of StarTran, Inc., a Texas nonprofit corporation that was intimately connected with the Capitol Metropolitan Transit Authority (a political subdivision), and remanded the case to the trial court for determination of whether StarTran was a "political subdivision" under the appellate court's analysis. Id. We must determine whether an Oklahoma public trust is a "political subdivision" under federal guidelines; while State law may be helpful, federal law ultimately controls such a determination.Natural Gas Util. Dist., 402 U.S. at 602-03.
 Legal Status of Oklahoma Public Trusts Under the OSHAAct I. State Law Factors
The term "political subdivision" has no single, fixed meaning under Oklahoma law. The Oklahoma Constitution, Article X, Section 26(a) authorizes any county, city, town, township, school district or otherpolitical corporation, or subdivision of the state to incur indebtedness extending past the then current fiscal year of the entity by the issuance of bonds, subject to approval of voters. Id. For more than fifty years, a "political subdivision" of the State was held to be a county, city, town or school district for purposes of this constitutional limitation; no other entity was found to possess the requisite constitutional powers to call and hold elections for approval of bond issuances and to make payments of principal and interest on the bonds through a levy of ad valorem tax. See Sheldon v. Grand River Dam Auth., 76 P.2d 355, 361
(Okla. 1938); City of Tulsa v. Dabney, 270 P. 1112, 1114 (Okla. 1928);Faught v. City of Sapulpa, 292 P. 15, 19 (Okla. 1929); Bd. of CountyComm'rs v. City of Muskogee, 820 P.2d 797, 810 (Okla. 1991), overruled inpart by Clay v. Indep. Sch. Dist. No. 1, 935 P.2d 294, 306-07 (Okla. 1997). Thus, for the constitutional purpose of issuing general obligation bonds (i.e., bonds retired from the proceeds of a property tax levied by the issuing entity), a "political subdivision" had, and continues to have, a very limited meaning.
However, for other purposes such as insulation of a governmental entity or agency from tort liability, the term "political subdivision" has been given a more expansive definition by the Legislature. See 51 O.S.Supp. 2009, § 152[51-152](11)(d) (defining political subdivision to include public trusts); Hammons v. Muskogee Med. Ctr. Auth., 697 P.2d 539, 541
(Okla. 1985).
Trusts for the benefit of the State, a county or municipality may be created under Trusts for Furtherance of Public Functions (60 O.S. 2001 Supp. 2009, §§ 176 — 180.4). The governing body of the beneficiary, e.g., a city council or board of county commissioners, must accept beneficial interest in the trust. 60 O.S.Supp. 2009, § 176[60-176](A)(2), (3). Any indebtedness or obligation of the trust must be approved by a two-thirds vote of the governing body of the beneficiary. Id. § 176(E). A public trust properly created under Title 60 is presumed to exist for the public benefit, existing as a legal entity separate and distinct from its beneficiary, and acting in the furtherance of a public function. Id.
§ 176.1(A); see State ex rel. Williamson v. Garrison, 348 P.2d 859, 863
(Okla. 1959). While such a trust is a separate entity for many purposes, such as the ability to finance public projects on a tax-exempt basis, an Oklahoma public trust has been determined by the Internal Revenue Service to be acting "in behalf of" its state-or-municipal beneficiary. See Rev. Rul. 57-151, 1957-1 C.B. 64, 1957 WL 11589. Thus, the income of such a trust, properly created, realized from the operation of water, sanitary sewer or other public utility plants, is not subject to federal income tax, just as the income of a municipality is tax-exempt. Id. Further, such trusts may issue bonds, the interest on which is exempt from federal income tax. Id.
While the activities of a public trust are not controlled by its beneficiary (60 O.S.Supp. 2009, § 176.1[60-176.1](D)), the trustees of a public trust are appointed and removed by the governing body of the beneficiary (id. §§ 176(A), 176.1(B)(1)) and the public trust is required to provide, on at least an annual basis, an audit and other reports to the beneficiary summarizing the activities of the trust. Id.
176.1(B)(2). Further, a public trust may exercise powers of eminent domain in substantially the same manner as its governmental beneficiary.Id. § 176(I).
The fact that a public trust acts on behalf of its beneficiary entity, and is "the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created," (60 O.S. 2001, § 179[60-179]), does not cause the trust to merge with its beneficiary. Williamson, 348 P.2d at 863. A public trust may be determined by the Legislature to be an agency of the State or local government for some purposes but not for others. A. G. Opin. 96-47, at 117.
For example, a public trust is required to comply with the Open Meeting Act and Open Records Act, and is defined as a "public body" under these laws.[2] A public trust having the State as beneficiary must comply with the Administrative Procedures Act although a municipal-beneficiary trust is not so required.[3] The Governmental Tort Claims Act defines "agency" as "any board, commission, committee, department or other instrumentality or entity designated to act in behalf of the state or a political subdivision[,]"[4] and further defines a public trust with a municipal or county beneficiary as a "political subdivision."[5] A public trust is included in the definition of a "public agency" in the Public Competitive Bidding Act[6] and must comply with its terms. Trustees of a public trust are subject to conflict of interest requirements, [7] in much the same manner as municipal officials.[8]
Sales to a public trust, acting on behalf of a municipality or governmental beneficiary, are exempt from sales taxes.[9] For other purposes, such as compliance with hiring freezes, certain finance laws regulating accounts of State agencies (i.e., the Central Purchasing Act and Oklahoma Municipal Employees Collective Bargaining Act) have found that State laws are inapplicable to public trusts. See Okla. CityZoological Trust v. State ex rel. Pub. Employees Relations Bd.,158 P.3d 461, 465 (Okla. 2007); A. G. Opins 96-47, at 118; 90-23, at 41; 84-135, at 252.
A primary reason for the existence of public trusts in Oklahoma is their ability to issue revenue bonds, service debt from available revenues, and construct and operate public facilities on behalf of their respective beneficiaries. 60 O.S.Supp. 2009, § 176[60-176](A); see Shottsv. Hugh, 551 P.2d 252, 254 (Okla. 1976); Bd. of County Comm'rs. v.Warram, 285 P.2d 1034, 1041 (Okla. 1955). While it is true that "[f]unds of public trusts are not funds of their governmental beneficiaries and the debts they create are not debts of their beneficiaries . . .,"[10]
we conclude that the primary reason for the existence of a public trust is to issue obligations, enter into financing transactions and provide funds "for the furtherance and accomplishment of any authorized and proper public function or purpose of the state or of any county or municipality." 60 O.S.Supp. 2009, § 176[60-176](A); Warram,285 P.2d at 1041. Southern Oklahoma Development Trust found the State-beneficiary public trust was authorized to finance and build a parking facility for public purposes "in the light of the public nature of the enterprise and the public economic benefits sought by means of the parking facility." Id. at 575.
In the Memorandum of Law attached to your request letter[11] you indicate one of the reasons for inquiring is to clarify whether OSHA or the Oklahoma Department of Labor ("Department") has jurisdiction to inspect jails and other public facilities being constructed by a public trust, particularly in the context of the Oklahoma Occupational Health and Safety Standards Act[12] ("Health and Safety Act") and the Oklahoma Asbestos Control Act ("Asbestos Act").[13]
A public trust created for the purpose of constructing, managing or operating a county jail facility may be created under either 60 O.S. 2001 Supp. 2009, §§ 176 — 180.4 or 19 O.S. 2001 Supp. 2009, §§ 904.1 — 904.7. In either event, "[t]he trust steps into the shoes of the county and the sheriff for the purpose of operating the county jail." A. G. Opin. 04-17, at 100; see Tulsa County Deputy Sheriff's F.O.P. v. Bd. ofCounty Comm'rs, 959 P.2d 979, 982 (Okla. 1998). Because the activities of a public trust are essentially governmental in nature and public trusts are governed by so many State statutes, we conclude public trusts formed under either Title 19 or Title 60 should be treated as a "political subdivision" for purposes of the OSHA Act, as explained below.
 II. Analysis Under the OSHA Act
When all the attributes of an Oklahoma public trust are considered together, we conclude a properly formed and operating public trust in Oklahoma satisfies the requirements of the OSHA Act as a political subdivision. See 29 U.S.C. § 652(5); 29 C.F.R. § 1975.5(b). To be properly formed a public trust in Oklahoma must be created pursuant to statute, i.e., 60 O.S. 2001 Supp. 2009, §§ 176 — 180.4 or 19 O.S. 2001, §§ 904.1[19-904.1] — 904.7, and once so created, acts on behalf of its governmental beneficiary to perform the functions for which the trust is formed. 60 O.S.Supp. 2009, § 176.1[60-176.1](A)(3); Warram,285 P.2d at 1041. In essence, it acts as an administrative arm of its governmental beneficiary, including, but not limited to, exercising the power of eminent domain in the same manner as its beneficiary may.
Further, under the second prong of the Code of Federal Regulations' test, an Oklahoma public trust is subject to numerous governmental controls, including many by the public officials who (i) approve the creation of the trust; (ii) approve any indebtedness incurred by the trust; (iii) must receive periodic accountings and audits summarizing the activities of the trust; and (iv) most importantly, have the power to appoint and remove the trustees. 29 C.F.R. § 1975.5(b).
Additionally, a public trust must abide by numerous State statutes relating to public agencies generally, including conformance with laws regarding open meetings, open records, competitive bidding, and conflicts of interest, and a public trust receives the same protection from tort claims as do other governmental or public agencies. Purchases by a public trust acting on behalf of a governmental beneficiary are exempt from State sales taxes in the same manner as purchases by nonprofit organizations. Perhaps most significantly, properly formed public trusts in Oklahoma have been determined by the Internal Revenue Service in Rev. Rul. 57-151 to be acting on behalf of their governmental beneficiaries. The essential character of a public trust is governmental in nature. Thus, while an Oklahoma public trust is not treated as a "political subdivision" for some state law purposes, we conclude a public trust is a "political subdivision" for purposes of the federal OSHA Act and is exempt from OSHA inspections.
It is, therefore, the official Opinion of the Attorney Generalthat:
 For purposes of 29 U.S.C. § 652(5) and other applicable provisions of the federal Occupational Safety and Health Review Act, Pub.L. 91-596, § 2, 84 Stat. 1590, (codified as amended at 29 U.S.C. §§ 651 — 677), including 29 C.F.R. § 1975.5 ("OSHA Act"), an employer that is an Oklahoma public trust created under 60 O.S.Supp. 2009, §§ 176[60-176] — 180.4 or 19 O.S. 2001, §§ 904.1[19-904.1] — 904.10 is a "political subdivision," and thus exempt from federal Occupational Safety and Health Administration ("OSHA") inspection.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
LYNN C. ROGERS ASSISTANT ATTORNEY GENERAL
[1] Pub.L. 91-596, § 2, 84 Stat. 1590, (codified as amended at29 U.S.C. §§ 651 — 677).
[2] 25 O.S. 2001, § 304[25-304](1); 51 O.S. 2001, § 24A.3[51-24A.3](2).
[3] 75 O.S. 2001, § 250.5[75-250.5].
[4] 51 O.S.Supp. 2009, § 152[51-152](2).
[5] Id. § 152(11)(d); see Walkingstick v. Muskogee Reg'l Med. Ctr.,992 P.2d 924, 925 (Okla. Civ. App. 1999).
[6] 61 O.S.Supp. 2009, § 102[61-102](5).
[7] 60 O.S. 2001, § 178.8[60-178.8](A).
[8] 11 O.S.Supp. 2009, § 8-113[11-8-113](A).
[9] 68 O.S.Supp. 2009, § 1356[68-1356](51).
[10] A. G. Opin. 90-23, at 40 (citing In re S. Okla. Dev. Trust,470 P.2d 572, 575 (Okla. 1970) and Morris v. City of Okla. City,299 P.2d 131, 137 (Okla. 1956)).
[11] See Memorandum of Law attached to letter from Lloyd L. Fields, Commissioner of Labor, to Drew Edmondson, Attorney General of Oklahoma, pp. 2-3 (Aug. 21, 2009) (on file with the author).
[12] 40 O.S. 2001 Supp. 2009, §§ 401 — 435.
[13] 40 O.S. 2001, §§ 450[40-450] — 457.