OSCN Found Document:CITY OF MUSKOGEE v. PHILLIPS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 CITY OF MUSKOGEE v. PHILLIPS
2015 OK CIV APP 57
352 P.3d 51
Case Number: 111501
Decided: 11/21/2014
Mandate Issued: 06/10/2015
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2015 OK CIV APP 57, 352 P.3d 51

 

CITY OF MUSKOGEE, OKLAHOMA, A Municipal Corporation, 
Plaintiff/Appellee,
v.
CATHERINE M. PHILLIPS, a/k/a CATHERINE MASTERSON 
and ORLIN PHILLIPS, Defendants/Appellants,
and
MUSKOGEE COUNTY TREASURER; 
BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, OKLAHOMA; EASTSIDE BOULEVARD, 
L.L.C.; FLOYD HARJO; HILLY HARJO, Defendants.

APPEAL FROM THE DISTRICT COURT OF MUSKOGEE COUNTY, 
OKLAHOMA
HONORABLE NORMAN THYGESEN, JUDGE

REVERSED

Matthew C. Beese, Muskogee, Oklahoma, for Plaintiff/Appellee,
David E. 
Anderson, Miami, Oklahoma, for Defendants/Appellants.


Bay Mitchell, Judge:
¶1 This is a condemnation action initiated by the City of Muskogee 
("Muskogee") against property owners, Defendants/Appellants Catherine Phillips 
and Orlin Phillips ("Property Owners"). Property Owners appeal from the trial 
court's Order overruling Defendants' exceptions to the Muskogee County 
Commissioners' Report in favor of Muskogee.[1]
¶2 In January 2012, Muskogee passed and adopted Resolution No. 2385 ("the 
Resolution") declaring the necessity for acquiring five parcels including 
private residential property for the construction of a parking facility 
described therein as a public utility pursuant to In re Application of 
Southern Oklahoma Development Trust, 470 P.2d 572. The Resolution 
provided "said parking facility is needed for the health and safety of the 
Citizen's [sic] of Muskogee by reducing the volume of on-street parking in the 
areas near and surrounding [public ways: North "G" Street; North "F" Street; 
East Broadway; and, Callahan Street]." The Resolution authorized acquisition of 
the subject properties by purchase or if they cannot be purchased, by 
condemnation proceedings. The Resolution further called for the parking facility 
to be constructed, maintained and operated through a leasehold estate with the 
Muskogee Parking Authority, a public trust.
¶3 The married Property Owners are the record owners of two parcels subject 
to the Resolution: a vacant lot and the residential property located at 211 
North G Street.[2] They have lived there together over 20 years and 
Mrs. Phillips had lived in that house (before they were married) for over 40 
years. In accordance with the authorization provided in the Resolution, the 
properties were appraised and The City Manager attempted to negotiate for the 
purchase of the subject properties.[3]
¶4 After the attempts to purchase the properties failed, Muskogee filed the 
instant action in June 2012, seeking to acquire the properties by condemnation. 
The Resolution and an affidavit declaring the necessity of the acquisition were 
attached as exhibits to the condemnation Petition. The Affidavit of Necessity, 
executed by Muskogee's Director of Public Works, provides in pertinent part as 
follows:

 
 In order to economically implement the City project known as the "VA 
 Parking Project 2012" pursuant to City Council Resolution NO. 2385, it is 
 necessary to acquire all the property needed to build a parking lot from and 
 including the areas between North "F" and "G" Streets and Callahan and East 
 Broadway. The real property subject to this suit is within this described 
 area. . . . As such, the City has determined that a public necessity exists 
 for the acquisition of the real property subject to this 
suit.
¶5 After proper appointment of Commissioners and the August 2012 filing of 
the Report of Commissioners, Property Owners timely filed their Exceptions to 
same.[4] Their 
primary objection was on the basis that the purported exercise of eminent domain 
was for an improper private purpose and not necessary for a lawful public 
purpose. Additionally, they asserted the Commissioners' Report suggests the 
taking was for the purpose of economic development, which is not a public 
purpose to justify the exercise of eminent domain.
¶6 Muskogee responded with the filing of a brief in opposition to Property 
Owners' Exceptions and an Application for a Writ of Assistance. It sought to 
condemn the properties pursuant to 11 
O.S. §22-104(2) and (3), which provides "Every municipality shall have the 
right to . . . acquire, own, and maintain . . . real estate for sites and 
rights-of-way for any municipal purpose including but not limited to public 
utility and public park purposes" and "exercise the right of eminent domain for 
any municipal purpose." Id. Muskogee essentially asserted the proposed 
parking facility is a public utility for which it may lawfully exercise its 
eminent domain power.
¶7 Subsequent to an evidentiary hearing, the trial court ultimately 
determined the principal purpose of the taking was a public purpose (while 
noting "there may be some tangential private benefits gained by individuals or 
private entities") and therefore overruled Property Owners' Exceptions to the 
Commissioners' Report.[5] Property Owners appeal.
¶8 We are guided by the Oklahoma Constitution concerning the taking of 
private property. Article 2, §23 provides as follows:

 
 No private property shall be taken or damaged for private use, 
 with or without compensation, unless by consent of the owner, except for 
 private ways of necessity, or for drains and ditches across lands of others 
 for agricultural, mining, or sanitary purposes, in such manner as may be 
 prescribed by law.
OKLA. CONST. Art. 2, §23 (emphasis added). Our Constitution further generally 
provides "private property shall not be taken or damaged for public use without 
just compensation." OKLA. CONST. Art. 2, §24. That constitutional provision 
additionally states "[in] all cases of condemnation of private property for 
public or private use, the determination of the character of the use shall be a 
judicial question." Id.[6] The law is clear that "[p]rivate property may 
not be taken or damaged by the condemning agency unless the taking or damage is 
necessary for the accomplishment of a lawful public purpose." Luccock v. City 
of Norman, 1978 OK 66, 578 P.2d 1204, 1206 (citing Art. 2, 
§§23 & 24 of the Oklahoma Constitution). Luccock demonstrates that we have 
used the terms "public use" and "public purpose" interchangeably in our analysis 
of our state constitutional eminent domain provisions, and we therefore view 
these terms as synonymous. Id.
¶9 As a general rule, we construe our state constitutional eminent domain 
provisions "strictly in favor of the owner and against the condemning party." 
Board of County Comm'rs of Muskogee County v. Lowery, 2006 OK 31, 136 P.3d 639 (citation omitted). We 
additionally strictly construe eminent domain statutes. Id. As noted in 
Lowery, we adhere to a narrow construction of "public purpose" in the 
context of eminent domain cases (as opposed to a broader construction of that 
term in the context of public funding) as the power of eminent domain should be 
exercised with restraint. Id. at ¶11.
¶10 Evidence presented at the evidentiary hearing demonstrates the Property 
Owners' property is in close proximity to 800 East Okmulgee, the location of a 
commercial office building owned by Eastside Boulevard, L.L.C. ("Landlord"). 
Landlord leases its building to its tenant, GSA/VA Benefits, which operates a 
call center out of the facility. The number of employees working in that 
facility has increased in recent years. Although the facility has an on-site 
parking lot, VA employees were regularly parallel parking (often on both sides) 
on several nearby residential streets.
¶11 Muskogee officials testified the parking congestion on the residential 
streets surrounding the VA building created a safety hazard because emergency 
responders would have difficultly traveling the streets and/or accessing fire 
hydrants due to the number of cars parked on both sides of the road and/or in 
such a way as to block access to the hydrants. The VA parking project was 
designed to alleviate the parking demands within the neighborhood and thereby 
serve the public.
¶12 The record includes a contract executed in June 2012 entitled "Shared 
Parking Agreement Between the City of Muskogee and Eastside Boulevard, L.L.C." 
This contract provides for Landlord's agreement to donate seven parcels of 
property in the subject area to the Muskogee Parking Authority to be held in its 
name. In consideration for the contract, the contract further notes Landlord's 
plan for expansion of the VA building "by approximately 13,311 square feet for 
the future benefit of the GSA/VA Benefits." Muskogee and the Muskogee Parking 
Authority agreed to construct and maintain a parking facility with a minimum of 
200 spaces in accordance with the Resolution. Finally, the contract contained 
the following express agreement: "The City of Muskogee and the Muskogee Parking 
Authority agree to lease the parking spaces to VA Benefits employees first 
before they are offered to the public." (Emphasis added).
¶13 City Manager James Buckley testified the parking "congestion problem is a 
direct relation to the employees parking on the street." He further testified 
that under the terms of the Shared Parking Agreement, if the VA Benefits 
employees wanted to lease all of the parking spaces in the proposed parking 
facility, they could.
¶14 Based upon the facts and circumstances herein, we find the parking 
facility at issue herein cannot be construed as a public utility as it was 
designed and established primarily for the purpose of serving a private entity 
and/or employees of that entity's tenant.[7] See Lowery, 2006 OK 31, n. 15 (finding the 
private electric company was not a public utility on the basis of the absence of 
evidence in the record that the company "plan[ned] to supply power or 
electricity to members of the public who need it upon equal and reasonable 
terms."). Muskogee's reliance on In re Application of Southern Oklahoma 
Development Trust, 1970 OK 
118, 470 P.2d 572, in support 
of its assertion that the parking facility is a public utility is misplaced, 
particularly considering the fact that case was not in the context of eminent 
domain, but rather, bond issuance (with focus on public economic benefits 
sought by means of the parking facility therein). Id. at 574. Lowery 
clearly provides that in the context of eminent domain, economic development 
alone (not in connection with the removal of blighted property) does not 
constitute a public use or public purpose to justify the exercise of eminent 
domain as a matter of Oklahoma constitutional law. Lowery, 2006 OK 31, ¶0;[8] see supra discussion at 
¶9.
¶15 Further, insomuch as we find the proposed parking facility is primarily 
dedicated to serving the VA Benefits employees and/or Landlord in providing an 
off-site parking facility for its tenant, the taking of private property for 
such private purpose is constitutionally impermissible. The private character of 
the purpose behind the parking facility is particularly illuminated within the 
contractual provisions of the Shared Parking Agreement, which expressly 
designate that the employees be offered the parking spots before they are open 
to the public.[9] In fact, depending upon the number of VA Benefits 
employees to accompany the planned expansion of the building, the parking spots 
may never be offered to any member of the public. Additionally, the agreement 
expressly provides it "is in perpetuity and can only be terminated if 
comparable, replacement parking has been provided for the benefit of the GSA/VA 
Benefits employees. . . ." While the reduction in the number of employees 
parallel parking in the adjacent residential streets may provide an indirect 
public benefit by allowing for easier passage and flow of traffic thereon 
during certain times of the day, this public benefit is too attenuated to fall 
within our strict constitutional confines of "public purpose" to permit a 
municipality's exercise of eminent domain.
¶16 Insomuch as we find Muskogee's condemnation of Property Owners' private 
property was for an impermissible private purpose, the trial court erred in its 
Order overruling Property Owners' Exceptions to the Report of the Commissioners. 
Property Owners' brief includes a Motion for appeal-related attorney fees. This 
motion is denied without prejudice to the filing of a separate motion in 
compliance with Supreme Court Rule 1.14(B).

¶17 REVERSED.

BELL, P.J., and GOREE, J., concur.

FOOTNOTES

[1] An 
order adjudicating a right to condemn is appealable pursuant to 12 O.S. §952(b)(1) as a final order. 
McMillian v. Holcomb, 1995 OK 
117, ¶3, 907 P.2d 1034, 
1035-36.

[2] 
Property Owners' house was built in approximately 1935 and has 896 square feet 
of living space.

[3] 
Muskogee offered Property Owners the appraised values of $32,500 to purchase the 
residential property and $1,200 for the lot.

[4] 
Property Owners did not designate the Report of Commissioners for inclusion in 
the record on appeal. Thus, we are unable to review its contents.

[5] The 
trial court refrained from ruling on Muskogee's Application for a Writ of 
Assistance.

[6] A 
"judicial question" is a question of law, which on appeal is reviewed de 
novo. Okla. Gas & Elec. Co. v. Beecher, 2011 OK CIV APP 1, ¶¶7-8, 256 P.3d 1008, 1011.

[7] 
Muskogee cannot avoid constitutional restrictions on the power of eminent domain 
by merely labeling the proposed parking facility as a public utility. The 
purpose and use behind the exercise of eminent domain-here the purpose and use 
of the parking facility-- must be analyzed to discern if it passes 
constitutional muster. See, e.g., City & County of San Francisco v. 
Ross, 44 Cal.2d 52, 279 P.2d 529, 533 (1955) (rejecting the argument that 
the provision of off-street parking facilities at a reasonable rate regardless 
of ownership and primary purpose of operation ipso facto serves a public 
purpose); Shizas v. City of Detroit, 333 Mich. 44, 52 N.W.2d 589 (1952) 
(holding statute providing for condemnation of property to be used in part for 
off-street parking facilities and in part for rental for private business void 
for failure to satisfy the public purpose test); Reel v. City of 
Freeport, 61 Ill. App.2d 448, 209 N.E.2d 675 (1965) (reversing dismissal on 
the basis of allegations that defendant city conspired with other defendants to 
sell to defendant department store an existing parking lot for private use and 
thereafter take plaintiff's property to replace such parking facility for 
purported public use); City of Austin v. Whittington, 55 Tex. Sup. Ct. J. 
1245, 384 S.W.3d 766 (2012) (concluding that parking garage was a "public 
building" where it was open to the public and the primary purpose of the garage 
was to support an expanded convention center legislatively considered a public 
use supportive of the city's condemnation of privately owned land necessary for 
such use); Rhode Island Economic Development Corp. v. The Parking Co., 
L.P., 892 A.2d 87 (holding where condemnation of a temporary easement in an 
airport parking garage was primarily designed for economic benefit to gain 
control of the garage at a discounted price, the taking was not for public use 
and therefore was an unconstitutional taking).

[8] 
Muskogee attempts to distinguish Lowery on the basis that economic 
development (i.e., increased taxes, jobs and public and private 
investment in the community) was not its stated purpose behind its instant 
condemnation quest. While we refrain from making a determination on whether the 
de facto purpose behind the taking herein was for economic development 
purposes, we nevertheless find the principle holding in Lowery (that the 
taking of private property to confer a private benefit on a private party is 
unconstitutional) applicable to the taking herein regardless of the parties' 
characterizations of its purpose.

[9] In 
Lowery, the private electric company had a contract with the water 
district wherein the electric company had agreed to construct a water pipeline 
beneficial to the public on the condition precedent of the company's success in 
acquiring the rights-of-way for two private pipelines intended solely to serve 
the private company. Lowery, 2006 OK 31, n. 14. "If we were to 
find the public purpose test satisfied on these facts, we would essentially be 
first permitting the taking of private property for a private use in order to 
give rise to a private, non-party's contractual obligation to construct a 
pipeline that would ultimately satisfy the public purposes requirement." 
Id. Just as in Lowery, our determination of "public purpose" here 
is constrained by the terms of a contract, which may never give rise to public 
use/purpose unless and until the contractual obligatory first offering of 
parking spaces to private third-party beneficiaries.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2011 OK CIV APP 1, 256 P.3d 1008, OKLAHOMA GAS AND ELECTRIC COMPANY v. BEECHER
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1970 OK 118, 470 P.2d 572, APPLICATION OF SOUTHERN OKLAHOMA DEVELOP. TRUST
Discussed at Length
 1995 OK 117, 907 P.2d 1034, 66 OBJ 3471, McMillian v. Holcomb
Discussed
 2006 OK 31, 136 P.3d 639, BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY v. LOWERY
Discussed at Length
 1978 OK 66, 578 P.2d 1204, LUCCOCK v. CITY OF NORMAN
Discussed
Title 11. Cities and Towns
 Cite
Name
Level

 11 O.S. 22-104, Right to Engage in Business - Public Utilities and Improvements - Eminent Domain - Issuance of Bonds - Lease of Public Utility
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 952, Jurisdiction of Supreme Court
Cited